(8 App. Div. 444)

## SHELBY STEEL-TUBE CO. v. BURGESS GUN CO.

(Supreme Court, Appellate Division, Fourth Department, July 30, 1896.)

1. CONFLICT OF LAWS—PLACE WHERE CONTRACT WAS MADE.

A contract for the sale of goods shipped to the buyer in New York from another state pursuant to an order sent by mail is completed on acceptance of the order, and is therefore made in such other state.

2. FOREIGN CORPORATIONS—ACTIONS BETWEEN.

A foreign corporation doing business in New York purchased goods from another foreign corporation doing business at its domicile, where the contract of sale was made. *Held* that, on default of payment, the cause of action for the price of the goods arose at the place where the buyer was doing business, and therefore the seller could sue there, under Code Civ. Proc. § 1780, subd. 3, providing that one foreign corporation may sue another in New York, "where the cause of action arose within the state."

Appeal from special term, Erie county.

Action by the Shelby Steel-Tube Company against the Burgess Gun Company. From an order denying a motion to vacate an attachment, Frank B. Lefevre, a judgment creditor of defendant, appeals. Affirmed.

The plaintiff is a foreign corporation organized under the laws of the state of Ohio, and the defendant is likewise a foreign corporation organized under the laws of the state of West Virginia, having its manufactory and place of business at the city of Buffalo, in this state. On the 27th day of July, 1895, the defendant sent to the plaintiff, at Shelby, in the state of Ohio, a written order for the goods, wares, and merchandise mentioned in the complaint. This order was sent by letter, which was mailed at Buffalo. It was subsequently received by the plaintiff, and accepted, and the goods ordered were thereafter sent to the defendant, and delivered to it at Buffalo, in the ordinary course of business, and upon a credit of 60 days. After the expiration of the term of credit, the plaintiff commenced an action against the defendant, upon which judgment was entered upon the 10th day of January, 1896, in the clerk's office of Erie county, for $273.70. This judgment was thereafter vacated and set aside by an order of the supreme court. The plaintiff also obtained a warrant of attachment from the county judge of Erie county, by virtue of which it caused all the personal property of the defendant to be attached. Upon the 20th day of January, 1896, Frank B. Lefevre obtained a judgment against the defendant in the supreme court, and caused the same to be entered in the Erie county clerk's office for the sum of $141,930.70 damages and costs. The plaintiff had no office or place of business within this state, and has failed to obtain the certificate and file the proof required by sections 15 and 16 of the general corporation law. Upon the 3d day of January, 1896, the above-mentioned judgment creditor moved at a special term of the supreme court in the city of Buffalo to vacate the attachment obtained by the plaintiff, which motion was denied, and from the order denying the same this appeal was taken. After the decision of the above-mentioned motion, the attorneys for the plaintiff and judgment creditor entered into a written stipulation as to the facts of this case, which stipulation appears in the appeal book, and contains, substantially, the facts above stated.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

Charles F. Tabor, for appellant.

Sidney W. Petrie, for respondent.

ADAMS, J. It will be seen from a perusal of the accompanying summary of facts that this case comes into this court under somewhat peculiar circumstances, for since the decision of the appellant's motion at special term the attorneys have entered into a written stipulation with the declared purpose of obviating what was, up to the time of its execution, a rather loose and unsatisfactory statement of the facts relied upon by each of them. So far as we are able to discover, however, the stipulation simply renders concise and clear what was previously diffuse and vague, and therefore we are disposed to entertain the appeal, although we certainly should not feel at liberty to do so if the facts established by such stipulation were essentially different from those which were made to appear when the order appealed from was granted. Both the parties to this action are foreign corporations, and the appellant, who is seeking to vacate the attachment obtained by the plaintiff against the defendant, is a judgment creditor of the latter, whose judgment lien was obtained subsequently to the attachment; and, consequently, he is in a position to attack the plaintiff's warrant upon any ground which would render it nugatory. Code Civ. Proc. § 682. The grounds relied upon by the appellant are specifically detailed in the notice of motion to vacate the attachment, and, relieved of all redundance, they may be regarded as two in number, viz.: (1) That the moving papers failed to show either that the contract was made or that the plaintiff's cause of action arose within this state; and (2) that such papers likewise failed to show the plaintiff's right to maintain its action, by a compliance with the requirements of sections fifteen and sixteen of the general corporation law of this state. In our review, therefore, of the decision of the special term, it becomes necessary to determine whether the appellant's contention has any substantial foundation upon which to rest, or, in other words, whether the plaintiff has failed to establish clearly and satisfactorily its right to the extraordinary remedy to which it has resorted, as it most assuredly was bound to do. Smith v. Union Milk Co., 70 Hun, 348, 24 N. Y. Supp. 79, affirmed 143 N. Y. 622, 37 N. E. 827.

Considering these propositions, then, in the order in which they are stated, it is to be borne in mind that, inasmuch as the plaintiff and the defendant are foreign corporations, the former was called upon to establish affirmatively, as a prerequisite to obtaining its attachment, either that the contract sued upon was made, or else that its cause of action thereon arose within this state. And the first question to be determined is whether or not it has fulfilled this requirement. It appears that the plaintiff was organized as a corporation under the laws of the state of Ohio, and the defendant under those of the state of West Virginia. The former had no place of business, and made no pretense of doing business within this state; but the latter did have its manufactory and office for the transaction of business in the city of Buffalo. Upon the 27th day of July, 1895, the goods, wares, and merchandise mentioned in

the complaint were ordered by the defendant by a letter written at the city of Buffalo, and mailed to the plaintiff at Shelby, in the state of Ohio; and the goods so ordered were, in due time, shipped and delivered to the defendant at Buffalo, upon a credit of 60 days. The contract, therefore, was not completed until the acceptance of the order; and, as this was done in the state of Ohio, there does not appear to be much room for doubt as to where the contract was actually made. Whart. Confl. Laws, § 421; 2 Pars. Cont. 701; Varnish Co. v. Connell, 10 Misc. Rep. 553, 32 N. Y. Supp. 492; Manufacturing Co. v. Connell, 88 Hun, 254, 34 N. Y. Supp. 717. It does not follow, however, that because the contract was not made within this state, a cause of action could not arise here.    No cause of action arose anywhere upon this contract until the defendant had made some default in the payment of the contract price of the goods purchased, for, as was said in Durham v. Spence, L. R. 6 Exch. 46, "a cause of action is that which produces the necessity for bringing the action." And in this case no necessity for bringing an action existed until after the expiration of the term of credit given.    Again, it was said by Cleasby, B., in the case just quoted from:

"The cause of action must have reference to some time as well as some place. Does, then, the expiration of the time when the cause of action arises give us any assistance in determining the place where it arises? I think it does. The cause of action arises when that is not done which ought to have been done, or that is done which ought not to have been done. But the time when a cause of action arises determines also the place where it arises, for, when that occurs which is the cause of action, the place where it occurs is the place where the cause of action arises."

These definitions have been approved and adopted by the courts of this state.    Bank v. Lacombe, 84 N. Y. 367, 384; Toronto General Trust Co. v. Chicago, B. & Q. R. Co., 32 Hun, 190.    Applying them, then, to the case in hand, it will be seen that the thing to have been done which was not done was the payment of the contract price of the goods purchased at the expiration of the term of credit allowed. And it follows that this payment ought to have been made at the place where the term of credit expired, which, as we have seen, was the city of Buffalo.    The cause of action, therefore, arose there, and the plaintiff, consequently, has brought its case within subdivision 3 of section 1780 of the Code of Civil Procedure, which provides that an action may be maintained by one foreign corporation against another, "where the cause of action arose within the state."

We are then brought to a consideration of the remaining question, and which apparently is the one upon which the appellant places his main reliance.    But the conclusion which we have reached respecting the place where the plaintiff's cause of action arose of necessity disposes of the contention that the plaintiff was prevented from maintaining its cause of action because of the omission to procure the certificate and file the proof required by sections 15 and 16 of the general corporation law.    Section 16 of this law simply provides' that, before granting such certificate, the secretary of state shall require every such foreign corporation to file in his office a sworn copy of its charter, and a statement under its corporate seal, particularly setting forth the business or objects of the corporation

which it is engaged in carrying on, or which it proposes to carry on, within the state, and the place within the state which is to be its principal place of business, and designating in the manner prescribed in the Code of Civil Procedure a person upon whom process against the corporation may be served within the state. And section 15, so far as it has any application to this case, reads as follows:

"No foreign stock corporation other than a monied corporation, shall do business in the state without having first procured from the secretary of state a certificate that it has complied with all the requirements of law to authorize it 'to do business in this state. * * * The secretary of state shall deliver such certificate to every such corporation so complying with the requirements of law. * * * No foreign stock corporation doing business in this state without such certificate shall maintain any action in this state upon any contract made by it in this state until it shall have procured such certificate."

All that we deem necessary, in order to dispose of this question, is to call attention to the fact that the inhibition contained in these sections, or either of them, resulting from a failure upon the part of the plaintiff to comply with their requirements, relates (1) to the conducting of business within this state, which, as we have already seen, the plaintiff was in no wise attempting; and (2) the maintaining of any action in this state upon any contract made therein. We have endeavored, in our discussion of the appellant's first contention, to draw the distinction between a contract and a cause of action; and if we have succeeded in making such distinction clear, there will be no difficulty in making equally manifest the proposition that the second of the inhibitions above mentioned has no application to this case, for the reason that the plaintiff is not seeking to maintain its action upon "any contract made by it in this state," but only upon a cause of action which arose therein. We conclude, therefore, that the plaintiff's right of action is clearly established, as is also its right to a warrant of attachment, and that, consequently, the order appealed from should be affirmed.

Order affirmed, with $10 costs and disbursements. All concur.