W. & S. JOB & COMPANY, INC., Appellant, *v.* N. B. COOK OIL COMPANY, INC., Respondent.

First Department, May 2, 1919.

**Sale — contract for merchandise to be transported by water construed — loss from destruction of ship by German submarine — when purchaser not liable.**

Under a contract for the sale of merchandise to be shipped from Newfoundland to New York, providing that the seller's responsibility ceases after delivery on pier at Brooklyn from the importing ship; that the seller shall have the option of canceling the contract in case the goods are burned or lost at sea, and further providing that if the buyer orders any of the merchandise named in the contract to be shipped during times of war the prices quoted do not include war risk unless specially specified, and that said war risk if required is to be on account of the buyer, it was the intention of the parties that the merchandise should remain the property of the seller until delivery was made from the import ship upon the pier at Brooklyn, and, hence, the purchaser cannot be held liable for the price of said merchandise which was lost by the sinking of the vessel upon which it was being shipped by a German submarine.

APPEAL by the plaintiff, W. & S. Job & Company, Inc., from a judgment of the Supreme Court in favor of the defendant,

entered in the office of the clerk of the county of New York on the 19th day of October, 1918, upon a dismissal of the complaint by direction of the court at the close of the case after a trial before the court and a jury.

*Wharton Poor* of counsel [*Harold S. Deming* with him on the brief; *Haight, Sandford & Smith,* attorneys], for the appellant.

*Frederick E. Fishel,* for the respondent.

MERRELL, J.:

This action is brought to recover the purchase price of 100 barrels of cod oil and 50 barrels of cod liver oil shipped by the plaintiff to the defendant from St. Johns, N. F., to New York, and which oils were lost in transit by reason of the destruction on October 8, 1916, by a German submarine, of the vessel upon which the same were being transported. The question involved upon this appeal is upon whom the loss of the oils shall fall.

Both the plaintiff and the defendant are domestic corporations, each having an office in the city of New York. On or about August 29, 1916, the plaintiff entered into a contract in writing whereby it contracted to sell and deliver to the defendant 200 barrels of pure Newfoundland tanked cod oil, delivery to be in the last half of September from St. Johns, N. F., at sixty-one cents per wine gallon landed on dock of import ship at Brooklyn, N. Y. On or about September 11, 1916, the plaintiff also entered into a written contract with the defendant whereby the plaintiff agreed to sell and deliver to the defendant 200 tin lined barrels of pure Newfoundland non-freezing (Norwegian process) cod liver oil, to be shipped in lots of 50 barrels monthly, beginning September, 1916, at sixty-seven dollars and fifty cents per barrel delivered on dock of import ship at Brooklyn, aforesaid. The contracts for the cod oil and cod liver oil were in the form of letters addressed to the defendant and signed by the plaintiff, and upon each of said letters is noted the confirmation or agreement to the contract as stated in said letters. Each of said letters signed by the plaintiff contained the following provision:

" Our responsibility ceases after delivery on pier from the

importing ship. Sellers to have the option of cancelling contract should goods be burnt or lost at sea.

" This Contract is made subject to strikes, accidents, delays to carriers and other delays and conditions unavoidable and beyond our control. *Should buyers order any Merchandise named in this contract to be shipped during times of war the within prices do not include war risk, unless specially specified, and said war risk, if required, to be for account of the buyers.*"

The plaintiff construes said contract provision to mean that the goods were shipped at the risk of the purchaser. Of the goods shipped, 100 barrels of the cod oil and 50 barrels of the cod liver oil were shipped from St. Johns, N. F., upon the British steamship *Stephano* of the Red Cross Line, on or about October 4, 1916. The steamship *Stephano* was sunk by a German submarine on its way from St. Johns to New York on or about October 8, 1916, and the 100 barrels of cod oil and 50 barrels of cod liver oil were lost. Construing the contracts for these oils to charge the buyer with the loss thereof in transit, the plaintiff brings this action to recover of the defendant the purchase price of said oils.

I am unable to see any basis for plaintiff's claim. At the close of the evidence the court dismissed the complaint as to both causes of action. The contracts very plainly state that the seller's responsibility ceased after delivery on pier from the importing ship, which would be at Brooklyn, N. Y. This provision clearly indicates that the seller was responsible for the oils until delivery at the pier. The seller also had the option of canceling the contract in case the goods were burnt or lost at sea. This relieved the seller from any claim for failure to deliver the oils contracted by reason of the occurrence of either of said contingencies. The contracts contained the further provision that if the buyer ordered any of the merchandise named in the contract to be shipped during times of war the prices quoted in the contracts did not include war risk, unless specially specified, and that said war risk, if required, was to be for account of the buyer. In other words, if ordered during times of war, and if it became necessary to take out a war risk on the oils, the expense of such insurance was to be borne by the buyer, or as stated in the contracts, " said war risk, if required, to be for account of the

buyers." It would seem that the thing really in contemplation by said clause was that the expense of such insurance was to be borne by the buyer.

The loss of these oils was unexpected and without warning. As testified to by the plaintiff's president, during a long course of dealing and the frequent shipment of oils to defendant, it had never been the custom to insure the same against war risk. The contracts, to my mind, clearly indicate that it was the intention of the parties that the oils should remain the property of the seller, the plaintiff herein, until delivery was made from the import ship upon pier at Brooklyn, N. Y.

Within a day or two after the loss, and before the officers of plaintiff had consulted a lawyer, plaintiff's treasurer wrote defendant of the sinking of the steamship *Stephano* and the loss of the 100 barrels of cod oil and the 50 barrels of cod liver oil consigned to defendant, and called attention to the fact that plaintiff had the option of canceling the portion of the sale thus lost, and that plaintiff had communicated with its house at St. Johns in regard to the same. This letter further stated that the same was simply a notice of the loss, and that plaintiff would advise the defendant in the course of a few days if it was its desire to duplicate the lost deliveries. By such letter the plaintiff was merely notifying defendant that it could not hold plaintiff for delivery of the oils which had been lost at sea, as the plaintiff had according to its interpretation of the contract the option of canceling the contract as to that portion of the oils it had contracted to deliver to defendant, which had been thus lost. It further notified defendant that it had communicated with its Newfoundland house in regard to the same, and that in the course of a few days it would advise defendant if it was their desire to ship other oils to duplicate those lost and so fulfill its contract with the defendant. This communication clearly evidenced an understanding on plaintiff's part that it was to stand the loss of the oils. The letter contains no suggestion that the defendant was expected to stand such loss, or was to be asked to pay the price therefor, unless the shipment was duplicated and the full quantity of the oils for which defendant had contracted was delivered. Defendant's first intimation of the loss of the oils came from the public press announcing the loss of the

steamship *Stephano*. Defendant's vice-president and treasurer at once called up plaintiff's office and talked with its president, and, for the first time, learned that a portion of the oils which were to be delivered to defendant went down with the sunken vessel. During this conversation plaintiff's president told the vice-president and treasurer of the defendant that, with relation to shipment of the balance of said oils, the plaintiff would make no further shipments of oils from St. Johns unless the defendant assumed the war risk insurance. After conferring with the president of the defendant, the treasurer told plaintiff's president that they would assume the expense of insuring future shipments of oil under said contracts. This conversation is virtually admitted by the president of the plaintiff, who testified that he told defendant's representative that for future shipments the defendant would have to take out insurance. Plaintiff's president admitted that at that time they had not consulted a lawyer, and that he was then in doubt as to who must stand the loss, and that being in doubt was the reason why he went to a lawyer.

I think a fair construction of these contracts shows that the loss was upon the seller, and that the purchaser should not be held therefor. The contracts, to me, seem free from ambiguity, and certainly the construction placed upon said contracts by the defendant is borne out by the practical construction given them by plaintiff's officials, both by their letter of October 10, 1916, to the defendant company, and also by the telephonic communication between the plaintiff's president and the officials of the defendant.

There was some question as to whether or not the shipment of these oils was delayed, and as to whether or not the defendant consented to such delay, but that is unimportant in view of the conclusion which we have reached, that the loss of these oils clearly should fall upon the plaintiff.

The judgment in defendant's favor, dismissing plaintiff's complaint as to both causes of action, should be affirmed, with costs.

CLARKE, P. J., LAUGHLIN, DOWLING and PAGE, JJ., concurred.

Judgment affirmed, with costs.