SMITH COMPANY, LIMITED, Appellant, *v.* GEORGE MOSCAH-
LADES and Others, Doing Business under the Firm Name
and Style of MOSCAHLADES BROTHERS, Respondents.

First Department, July 2, 1920.

Sales — sale and delivery of goods at Newfoundland " c. i. f." —
rights of seller and buyer under such contract — duty of seller to
procure marine insurance — customs and usages of coastwise
trade — when seller not required to insure against war risks —
destruction of goods by submarine — evidence — customs and
usages — waiver of objections to inadequacy of marine policy.

Action to recover an unpaid balance of the purchase price of codfish shipped
by the plaintiff, who does business only in Newfoundland and Labrador,
to the defendants in New York, which goods were destroyed *en route* to
New York when the vessel in which they were carried was torpedoed and
sunk by a German submarine, which loss was not covered by the marine
insurance procured by the plaintiff. The goods were shipped " c. i. f.,"
which by the custom of the trade requires the buyer to pay a fixed price
for which the seller furnishes the goods and pays the freight and insur-
ance to the point of delivery, all risks to the goods while in transport
being for the account of the buyer. Under said contract the seller fulfills
his obligations by putting the cargo on board and forwarding to the
purchaser a bill of lading and a policy of insurance of the kind then current
and customarily issued in the trade, the insurance being for the protection
of the purchaser who assumes all risks after the goods have been placed
on board.

*Held*, that, under the custom aforesaid, such acts by the seller constituted a
delivery to the buyer and the title passes even though it be stated in the
contract that delivery is to be made at the point of destination.

The rule that the title passes to the buyer on the performance by the seller
of the acts aforesaid is not affected by the Sales of Goods Act of this State.

The sale aforesaid was made at Newfoundland and the contract as to the
procuring of insurance is to be construed and governed by the customs
and usages of shippers by coastwise trade between St. Johns and New York,
and the purchaser in New York is governed by said usages in accepting
insurance which required the seller only to take out ordinary marine
insurance without war risks.

In such action it was error to exclude the testimony of competent witnesses
called to show the customs and usages of such trade at St. Johns, and also
to exclude evidence to the effect that after the commencement of the
European war ordinary marine policies had been procured by the plaintiff
and accepted by the defendants.

It was also error to receive evidence of a custom at New York to procure

war risk insurance given by witnesses who were only familiar with the custom concerning transatlantic shipments, and shipments *from* the port of New York.

Any valid objection that the defendants might have made to the inadequacy of the marine policy tendered was waived by their failure to object on that ground and by placing their objections on other untenable grounds.

APPEAL by the plaintiff, Smith Company, Limited, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 14th day of April, 1919, upon the verdict of a jury, and also from an order entered in said clerk's office on the 2d day of May, 1919, denying the plaintiff's motion for a new trial made upon the minutes

*Hiram Thomas* of counsel [*Henry H. Abbott* and *Edward A. Craighill, Jr.*, with him on the brief], for the appellant.

*Francis M. Scott* of counsel, for the respondents.

LAUGHLIN, J.:

This is an action to recover the sum of $13,040, being the unpaid balance of the purchase price of 400 casks of codfish which plaintiff sold to defendants. Plaintiff delivered the fish on board of the steamship *Stephano* at St. Johns on October 4, 1916, and two days later the steamship while *en route* to New York was torpedoed and sunk by the German submarine " U-53." Plaintiff procured marine insurance, which did not include such a loss, on the shipment and no war risk insurance was obtained thereon. The counterclaims were for $2,000 paid on account of the purchase price of the fish and interest thereon, and the difference between the market price and the contract price. Plaintiff is a Newfoundland corporation having its office at St. Johns, where it was engaged in the business of buying and exporting fish. All of its sales were for deliveries from Newfoundland and Labrador. It had no branch office and transacted no business in the city of New York. Defendants were copartners engaged in business in New York city as importers and exporters of fish. The court instructed the jury that if defendants were entitled to recover on their counterclaims, the amount of their damages was fixed and consisted of the $2,000 paid on the purchase price

of the fish and $300 interest thereon and $3,200, the difference between the contract and market price; but the jury rendered a verdict in their favor for only $2,300 which was the amount paid, with interest. The points litigated were whether it was the duty of the plaintiff to procure war risk insurance on the consignment and, if not, whether it performed the contract in other respects and, if not, whether defendants waived any such failure of performance. The appellant claims that the trial court erred in excluding material competent evidence offered by it and in instructing the jury; and that the failure of the jury to follow the instructions of the court with respect to the amount of defendants' damages shows that the verdict was the result of a compromise and that, therefore, the verdict should not be permitted to stand, and it cites as authority for that contention *Messmer* v. *Boettger Silk Finishing Co.* (160 App. Div. 519); *Bigelow* v. *Garwitz* (15 N. Y. Supp. 940); *Feldman* v. *Levy* (56 Misc. Rep. 563); *Powers* v. *Gouraud* (19 id. 268); *Zeilian* v. *Beggs & Co.* (153 App. Div. 687) and *Baum* v. *Halperin* (169 N. Y. Supp. 489).

In the view I take of the case, it is unnecessary to consider whether the verdict should be deemed the result of a compromise and a new trial should be ordered on that ground, for the judgment must be reversed on other grounds.

The contract is evidenced by telegrams between defendants from their office in New York and plaintiff in St. Johns, and two letters merely confirming telegrams. The messages and letters show that the negotiations were opened by an inquiry by defendants for plaintiff's lowest terms on 100 tons of Labrador codfish on September 30, 1916, for prompt shipment, followed by an offer by the plaintiff of 500 casks of 560 pounds each, at $40 per cask " c. i. f." New York, October shipment, to which defendants replied by merely accepting 400 casks to arrive before October eighteenth with directions for marking the casks and confirmed it by letter, whereupon plaintiff answered that it could not guarantee shipment of the full quantity and asked if part would do, and to that defendants replied requesting plaintiff to wire the number of casks it would ship so that defendants could secure freight space on the steamship *Stephano* sailing October seventh, to which plaintiff answered by wire that it could ship 200, possibly

400 casks, but must have credit immediately and wrote concerning the form of credit, and defendants replied that they were willing to remit a deposit of $2,000 and pay the balance at sight and requested plaintiff *to wire acceptance* which plaintiff did on October third. This consummated, the contract which became what is known as a " c. i. f." contract, which is a well-known form of shipping contract and means that the purchaser pays a fixed price for which the seller furnishes the goods and pays the freight and insurance to the point of delivery and that all risks, while the goods are in transit, are for the account of the buyer. Under such contracts the seller fulfills all of his obligations by putting the cargo on board and forwarding to the purchaser a bill of lading and a policy of insurance of the kind then current and customarily issued in the trade, and if the goods had not been paid for in advance it was customary to present a draft for the purchase price accompanied by the bill of lading and policy of insurance and a credit slip for the insurance and freight if not actually paid for by the shipper, which documents were to be delivered to the purchaser on his paying the draft, and the insurance is for the protection of the purchaser, who assumes all risks after the goods have been placed on board; and this constitutes a delivery by the seller under such a contract and title thereupon passes to the buyer even though it be stated in the contract that delivery was to be made at the point of destination. (*Thames & Mersey Ins. Co.* v. *United States*, 237 U. S. 19; *Mee* v. *McNider*, 39 Hun, 345; affd., 109 N. Y. 500; *C. Groom, Ltd.,* v. *Barber*, L. R. [1915] 1 K. B. 316; *Arnhold Karberg & Co.* v. *Blythe, Green, Jourdain & Co.,* L. R. [1916] 1 K. B. 495; *Tregelles* v. *Sewell*, 7 H. & N. 574; *Ireland* v. *Livingston*, L. R. 5 H. L. 395; *Biddell Brothers* v. *E. Clemens Horst Co.,* L. R. [1911] 1 K. B. 214; revd., Id. 934, but trial court affirmed, *sub nom. E. Clemens Horst Co.* v. *Biddell Brothers*, L. R. [1912] App. Cas. 18.)

The learned counsel for the respondents contends that this contract was made here and that it is a New York contract. Inasmuch, however, as he does not argue, as was claimed on the trial, that under our Sales of Goods Act title did not pass to the buyer, it is unnecessary to discuss at length the provisions of

the Sales of Goods Act and it is sufficient to say that under the provisions of the Sales of Goods Act such contracts remain as before and the delivery of the goods to the carrier is an unconditional appropriation thereof to the purposes of the contract and title passes to the buyer even though the purchase price is payable before the purchaser is entitled to the actual delivery of the goods or the documentary evidence of title which in this case was a bill of lading to the order of the seller duly indorsed by it. (Pers. Prop. Law, §§ 127, 101, 103, subd. a, 108, 109, 110, as added by Laws of 1911, chap. 571; Id. § 100, rule 4, as added by Laws of 1911, chap. 571; *Sawyer* v. *Dean*, 114 N. Y. 469; *Glanzer* v. *Armsby Co.*, 100 Misc. Rep. 476.) Rule 5 of said section 100 is inapplicable for a " different intention appears " and the case falls within the express exception prescribed in said section, where, as here, a " c. i. f." contract is made. As already observed, the insurance in such a case is for the benefit of the buyer and the purchase price includes the freight and insurance charges which the seller must pay or for which he must give credit; and under such a contract no inference is permissible that the seller is bound to deliver at the point of destination. (*Mee* v. *McNider, supra; Tregelles* v. *Sewell, supra; Smith Co., Ltd.,* v. *Marano*, 267 Penn. St. 107; 110 Atl. Rep. 94 [Penn. Sup. Ct.]; N. Y. L. J. June 9, 1920. See, also, *White* v. *Schweitzer*, 147 App. Div. 544.) In *Smith Co., Ltd.,* v. *Marano* (*supra*), an action brought by this plaintiff to recover the purchase price of fish consigned on the same steamer to the defendant therein at Philadelphia, it was held that the delivery on board the steamer was a complete delivery and title passed and that the c. i. f. contract was unaffected by the Pennsylvania Sales Act (Penn. Laws of 1915, p. 543, No. 241), which is the same as ours, inasmuch as the bill of lading was only retained by the shipper to secure performance of the purchaser's promise to pay. The only significance now attached to the claim that this was a New York contract is that counsel for respondents argues therefrom that the custom at New York with respect to the nature of the insurance the shipper was required to procure was controlling. That point was insisted upon by the defendants on the trial and on their objections the court excluded considerable competent evidence offered by the plaintiff to show that the universal custom at St. Johns and

current in the coastwise trade between that port and New York at the time and at all times prior to the sailing of the *Stephano* was for the seller to procure only ordinary marine insurance, and that such insurance only was procured and was customarily accepted by purchasers in New York city. I am of opinion that the contract was made at Newfoundland for it became binding and effective only by the last telegram sent by the plaintiff from St. Johns. (*St. Nicholas Bank* v. *State Nat. Bank,* 128 N. Y. 26; *Shelby Steel Tube Co.* v. *Burgess Gun Co.,* 8 App. Div. 444; *Burton* v. *United States,* 202 U. S. 344; *Hull Co.* v. *Marquette,* 208 Fed. Rep. 260; *Schenectady Stove Co.* v. *Holbrook,* 101 N. Y. 45; 7 Am. & Eng. Ency. of Law [2d ed.], 138; Elliott Cont. §§ 1115, 1116; 9 Cyc. 670, § 3.) I do not, however, regard that as material for it seems to me quite plain that the custom and usage in the light of which the contract is to be construed in determining the nature of the insurance which it was the duty of the shipper to procure were the custom and usage on the part of shippers, on whom the duty of procuring the insurance devolved in this particular coastwise trade; and it would seem, therefore, that it was the general custom and usage then current and followed by shippers of such freight from St. Johns to New York which necessarily would imply the same custom and usage on the part of the purchasers in New York in accepting such insurance. (*Walls* v. *Bailey,* 49 N. Y. 469; *Donovan* v. *Standard Oil Co.,* 155 id. 112; *Robinson* v. *United States,* 13 Wall. 363; *Renner* v. *Bank of Columbia,* 9 Wheat. 581; *Guillon* v. *Earnshaw,* 169 Penn. St. 463; *Starr Glass Co.* v. *Morey,* 108 Mass. 570; *Moore* v. *United States,* 196 U. S. 157; *Cuthbert* v. *Cumming,* 10 Exch. 809; 11 id. 405; *Soper* v. *Tyler,* 77 Conn. 104; *Howe* v. *Hardy,* 106 Mass. 329; *Job & Co., Inc.,* v. *Cook Oil Co., Inc.,* 187 App. Div. 535; *Atkinson* v. *Truesdell,* 127 N. Y. 230.) The rates for marine insurance, which covers the ordinary perils of the sea only, do not fluctuate rapidly and a shipper may, with some degree of accuracy concerning his profits, quote a price for the sale of goods which includes the freight and marine insurance to be paid or credited by him, but not so with respect to war risk insurance, which undergoes sudden material fluctuations. There is some evidence in the record tending to show that a

" c. i. f." contract only calls for ordinary marine insurance, and never calls for war risk insurance; but counsel for the plaintiff concedes that " c. i. f." contracts call for all insurance then current in the trade and he cites decisions which so hold. (See *Law & Bonar, Ltd., v. British Am. Tobacco Co., Ltd.,* L. R. [1916] 2 K. B. 605; *C. Groom, Ltd., v. Barber,* L. R. [1915] 1 K. B. 316.) The position taken by the plaintiff was and is that it was obligated to procure such insurance as was then customarily procured and current in the trade with respect to shipments by sellers by sea from St. Johns to purchasers in New York; and its counsel contends that such general usage and custom governs regardless of where the contract was made or where the insurance was procured. In other words, he contends that the inquiry is what insurance was customarily procured by such shippers and accepted by New York buyers with respect to such shipments, and he cites, as showing that where, as here, the contract does not provide otherwise, the parties having both been engaged in that line of business are presumed to have known and to have contracted with respect to such general usage and custom, the decisions in *Robertson v. N. S. Co.* (139 N. Y. 416); *Hostetter v. Park* (137 U. S. 30); *Heyworth v. Miller Grain & Elevator Co.* (174 Mo. 171); *Silverstein v. Michau* (221 Fed. Rep. 55); 2 Elliott Cont. (§ 1697); 17 C. J. (p. 461, § 19-b), which sustain his contention.

This court recently in effect so held in affirming a recovery by this plaintiff against Microutsicos (191 App. Div. 942), in which, however, we wrote no opinion, and the Court of Appeals on the 11th day of June, 1920, denied a motion for leave to review our decision (not reported). That was an action for the purchase price of fish lost on the same steamship, and the jury there found, on a special question submitted to them, that it was not customary for shippers under such contracts to take out war risk insurance on such shipments at that time. The court there received evidence of the prevailing custom and usage on the part of shippers at St. Johns in shipping to New York. The evidence was objected to on the ground that it should have been limited to a general custom and usage and that a particular custom and usage at the point of shipment was immaterial and incompetent. The objections were overruled and the evidence received and

the exceptions were presented on the appeal as grounds for a reversal. We deemed the evidence competent. Inasmuch as the shipper was to perform its contract at St. Johns, I am of the opinion that the custom and usage on the part of such shippers with respect to the nature of the insurance to be procured which, as already observed, necessarily implied that such insurance had also been customarily accepted by the purchasers in New York, was the custom and usage then prevailing with respect to such shipments and, since such shippers were almost exclusively engaged in business at St. Johns, it could be best shown by the custom and usage on their part at that port. The plaintiff called three competent witnesses, thoroughly familiar with such custom and usage and endeavored to show it by them; but the evidence was excluded on objections interposed by the defendants that it was a New York contract and that the inquiry should be confined to the custom and usage at the port of New York.

The court also erroneously excluded evidence duly offered by plaintiff to show that under prior similar contracts between plaintiff and defendant since the commencement of the European war marine policies only had been procured by plaintiff and accepted by defendants. Notwithstanding the exclusion of evidence offered by the plaintiff to show the custom at St. Johns, some evidence to the effect that such was then the custom was received, but the court erroneously received evidence of a custom at New York to procure war risk insurance given by witnesses who were only familiar with the custom concerning transatlantic shipments, and shipments *from* the port of New York. The court left it to the jury to determine whether the plaintiff should have procured war risk insurance and charged that the burden was on the plaintiff to show that it fully performed its obligations under the contract and instructed the jury that it was the duty of the plaintiff to procure the kind of insurance that was currently procured in the trade at that time. At the close of the charge, at the request of counsel for the plaintiff, the court instructed the jury that the plaintiff's obligation was to procure such insurance as was then currently procured in the trade, that is to say, the kind of insurance which was then being generally · taken out by shippers of fish sold by

them on " c. i. f." terms and which was then generally or customarily accepted in New York city and also charged that if there was a " standard form " of insurance, generally or customarily used by said shippers of fish under such contracts and if plaintiff procured such a policy, it performed its contract in that regard and was entitled to recover.   The court, however, thereafter at the request of counsel for the defendants, charged that it was the duty of the plaintiff to take out " such adequate insurance as the circumstances existing at the time required," and that unless it did so, defendants were entitled to a verdict.   To that instruction an exception was taken by plaintiff.   It is manifest that the court erred in so instructing the jury and thereby plaintiff lost all benefit it might have otherwise received under the correct instructions given at its request.   The errors in excluding the evidence as to the custom at St. Johns concurred in at New York, and in the charge, require a new trial, and, therefore, it is unnecessary to consider at length the respective contentions as to whether or not the marine insurance procured by plaintiff was sufficient and if not, as to whether the point was waived by the defendants by placing their refusal to pay solely on the grounds that plaintiff failed to obtain war risk insurance and that they were not obliged to pay until the goods were delivered at New York.   It is sufficient to say with respect thereto that both parties knew of the loss of the cargo before the shipping documents were tendered and that no marine policy was then of any avail; and we are of opinion that the evidence fairly tends to show that the original blanket insurance policy fully covered the goods and that an error was made subsequently in subdividing it which might have been rectified had defendants objected to accepting the shipping documents on that ground, and, therefore, any objection that the defendants might have made to the inadequacy of the marine policy tendered was waived by their failure to object on that ground and by placing their objections on the other untenable grounds.   (*Tamvaco* v. *Lucas*, 1 Best & Smith, 185, 199, 202, 205; *Hess* v. *Kaufherr*, 128 App. Div. 526; *Littlejohn* v. *Shaw*, 159 N. Y. 188; *Mee* v. *McNider*, *supra; Gould* v. *Banks*, 8 Wend. 562; *Railway Co.* v. *McCarthy*, 96 U. S. 258.)

It follows that the judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event.

CLARKE, P. J., DOWLING, PAGE and GREENBAUM, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.