GEORGE CAROCOPOS, INC., Appellant, *v.* JAMES CHIEVES & CO., Respondent. (Actions Nos. 1 and 2.)

First Department, November 3, 1922.

Sales — action by seller to recover damages for refusal of buyer to accept — goods purchased on c. i. f. contract — goods consigned to seller — evidence established that buyer was not refused inspection — contract not straight c. i. f. contract — title did not pass at point of shipment — expression " c. i. f., New York " determined selling price merely — buyer did not have right to refuse goods for failure of seller to produce insurance policy.

In an action by a seller of goods to recover damages based on the refusal of the buyer to accept the goods, an examination of the evidence establishes clearly that the buyer was not refused the right to inspect the goods, which were a part of a larger shipment consigned to the seller.

A contract for the purchase of goods " c. i. f., New York," to be shipped from a foreign country, is not a straight c. i. f. contract, where it appears that the goods were consigned to the seller, a resident of this State, and the title to the goods did not pass to the buyer at the point of shipment but remained in the seller until they were delivered to and accepted by the buyer after their arrival at the point of destination.

The expression " c. i. f., New York " in the contract meant no more than that the buyer of the goods should pay the cost of the shipment including insurance and freight to the point of destination, as a part of the cost of the goods and said term had no reference whatever to the place of delivery but related to the price only.

Accordingly, it was no defense to the action that the seller failed to produce the policy of insurance insuring the goods against loss, as the contract was not a straight c. i. f. contract, which would have imposed that duty upon him.

APPEAL in each action by the plaintiff, George Carocopos, Inc., from an order and determination of the Appellate Term of the Supreme Court, First Department, made in each action and entered

in the office of the clerk of the county of New York on the 22d day of November, 1921, affirming an order of the Municipal Court of the City of New York, Borough of Manhattan, Fourth District, denying plaintiff's motion to vacate a judgment of the Municipal Court and for a new trial upon the ground that said judgment was contrary to the law and the facts.

*Herbert G. McLear*, for the appellant.

*Goldstein & Goldstein* [*Jonah J. Goldstein* of counsel; *Joseph Force Crater* with him on the brief], for the respondent.

MERRELL, J.:

The actions were brought to recover damages claimed to have been sustained by the plaintiff because of defendant's refusal to accept 400 cases of Calamata Greek string figs, of about 130 pounds to the case, 1920 crop, contracted for by defendant at eleven and one-half cents per pound, c. i. f. New York, shipped in September, 1920, from Greece. The figs were sold by the plaintiff to the defendant under two separate written contracts substantially identical in form, one of which was dated August 17, 1920, and the other August 25, 1920. The actions were tried together and the testimony and exhibits are the same in each case.

The written contracts provided that the purchaser was to be allowed a discount of one per cent if the purchase price was paid within ten days of the date of delivery when passed by the Department of Agriculture. The purchaser agreed to purchase said figs and to pay for the same ten days from the date of delivery with the discount of one per cent as before mentioned if paid within ten days. Prior to the arrival of the figs and on September 27, 1920, the defendant, the purchaser, addressed a letter to the plaintiff asking to be advised how much the plaintiff would want to cancel the contracts, and stating that the defendant had theretofore found that they had had a lot of trouble with string figs, and, with the restricted credit that year, that they preferred not to handle the goods; that they were confining their business to only a few lines of commodities, and asked that the plaintiff consider a cancellation and advise defendant of its terms. Some negotiation was thereafter had, not, however, resulting in a cancellation of the contracts. Upon the arrival of the figs at the port of New York, the defendant refused to pay the duty thereon or to receive the figs. The only excuse offered was that defendant claimed the contracts were straight c. i. f. contracts, and that no insurance policy insuring against loss of the figs in transit was delivered to the defendant, and that defendant was unable to obtain an inspection of the goods on arrival at New York.

First Department, November, 1922.          [Vol. 203

Upon the trial the president of the defendant testified that upon being notified of the arrival of the figs he went to the owner of the vessel upon which the same had been brought from Greece and also visited the firm of custom brokers in charge of clearing the shipment, and was refused the right to inspect the figs unless he paid the import duty on the entire shipment consigned to the plaintiff, and consisting of some 2,500 cases of figs. He also testified that no insurance policy insuring the figs was produced as a part of the necessary documents. A firm of brokers had been agreed upon by the parties to take charge of clearing the shipment, and defendant's president testified that the representative of said brokers refused to permit him to pay duty upon the 400 cases defendant had purchased, and insisted that he must pay duty upon the entire consignment before they could be released for inspection. This testimony of defendant's president was flatly contradicted by the representative of the brokers.

Plaintiff's vice-president testified that defendant's president informed him of his inability to obtain an inspection of the figs and the insistence of the brokers that the duty upon the entire shipment must be paid before any part of the shipment was released; that thereupon, in the presence of the defendant's president, plaintiff's vice-president called up the brokers' representative by telephone and was informed by the brokers that defendant's claim in that respect was entirely unfounded, and that upon payment of the duty upon the 400 cases by the defendant they would be promptly released. Plaintiff's vice-president further testified that he then informed defendant's president that he could obtain inspection of said goods by paying the duty upon the 400 cases, and that defendant's president then said he would arrange to pay such duty. This, however, he did not do, and refused to take any further steps toward inspecting said figs or receiving the same pursuant to said contracts. This testimony of plaintiff's vice-president is not denied or disputed by defendant's president, and seems to conclusively answer the claim that the defendant had no opportunity to inspect the figs. The contention of the defendant that it had a right to refuse said figs because of the failure to produce the policy of insurance insuring the same against loss seems to be entirely without substance. The learned justice of the Municipal Court based his decision upon the failure of the plaintiff to produce such insurance policy. Under the form of the contracts in question it was no part of the plaintiff's duty to produce such policy, and the defendant was in nowise interested therein. There had been no loss of the property in transit, and the insurance thereon had been for the benefit and protection of the plaintiff alone, who was the

owner of the figs until they were delivered to and accepted by the defendant after their arrival at the port of New York. Under the terms of the contracts the defendant had no title to the figs whatever until delivered to defendant at the port of New York. Insurance was placed upon said figs while in transit, the policy being held by and for the protection of the plaintiff, who was the consignee of said goods. The case of *Smith Co., Ltd.*, v. *Moscahlades* (193 App. Div. 126), relied upon by the trial court as authority that under a c.. i. f. shipment plaintiff was obliged to procure insurance for the defendant covering this particular shipment, has no application to the facts in the case at bar. In *Smith Co., Ltd.*, v. *Moscahlades* a straight c. i. f. contract was involved, and in that case the goods became the property of the buyer at the time they were loaded on steamer and from thenceforth were at the buyer's risk. The ship bearing the merchandise covered by the contract in that case was sunk by a German submarine and the cargo lost. Unquestionably, under such circumstances, the buyer was entitled to insurance for his benefit. In the case at bar, however, the goods were consigned from Greece to the plaintiff in New York and were safely delivered here. Until their arrival here and until ten days after the date of the delivery of the figs to the defendant, the defendant was in nowise liable for the purchase price thereof.

The contracts in the case at bar are not straight c. i. f. contracts but are modified c. i. f. contracts and within our decision in the recent case of *Schopflocher* v. *Essgee Co. of China, Inc.* (197 App. Div. 781). In the case last cited, as in the contracts in the case at bar, the contract contained the expression, " c. i. f., New York." Admittedly these initial letters meant, " Cost plus insurance and freight to New York," and related to the price and had no bearing upon the question of the place of delivery. (See, also, *Miller & Sons Co.* v. *Sergeant Co.*, 191 App. Div. 814; *Maddaloni Olive Oil Co., Inc.*, v. *Aquino*, Id. 51; *Mee* v. *McNider*, 109 N. Y. 500.) It is entirely clear that the parties to the contracts in question meant no more by the expression, " c. i. f. New York," than that the purchaser of the figs should pay the cost of the shipment, including insurance and freight, to New York city, and that said term had no reference whatever to the place of delivery but related to price only. Therefore, the defendant could not have been interested in the insurance upon the figs, nor was it entitled to the possession of the insurance policy as any part of the documents upon delivery. The evidence shows beyond dispute a sufficient tender of the figs in question. Plaintiff's evidence required a judgment in its favor against the defendant for damages, and the dismissal of the complaint by the trial court was erroneous.

The order and determination of the Appellate Term should be reversed, and the judgment and order of the Municipal Court reversed, and a new trial granted, with costs in all courts to the appellant in each case to abide event.

CLARKE, P. J., SMITH, GREENBAUM and FINCH, JJ., concur.

In each case: Determination, order and judgment of the Municipal Court reversed and a new trial ordered, with costs in all courts to the appellant to abide the event.