In the Matter of the Application of S. A. Wenger & Co., Inc., Respondent, for an Order Directing that an Arbitration Proceed between the Said S. A. Wenger & Co., Inc., and Propper Silk Hosiery Mills, Inc., Appellant.

First Department, July 2, 1924.

Arbitration — proceedings to compel arbitration under contract — c. i. f. contract for sale of goods to be shipped from Japan provided for arbitration in event of dispute arising relative to fulfillment of terms — petitioner alleges that goods were destroyed while in its go-downs in Japan but claims appropriation of goods to contract prior thereto — contract being c. i. f. contract title would not pass until delivery of goods to carrier and forwarding of documents — title had not passed at time of destruction — no dispute shown as to fulfillment of terms of contract — arbitration denied.

Arbitration will not be compelled under a c. i. f. contract for the sale of goods to be shipped from Japan, which provides for arbitration in the event of any dispute arising relative to the fulfillment of any of the terms of the contract, where the petitioner alleges that the goods were destroyed while in its go-downs in Japan but claims that the goods were appropriated to the contract prior to their destruction and that therefore, the buyer is liable for the purchase price thereof, since there is no dispute between the parties as to the fulfillment of the terms of the contract but merely a question as to when the title to the goods passed. The contract being a c. i. f. contract, title would not pass to the buyer until delivery of the goods to the carrier and the forwarding of the necessary documents. As the goods in question were in the possession of the seller at the time of their destruction, title had not passed to the buyer at that time and it is not liable for the purchase price.

Smith, J., dissents, with opinion.

Appeal by Propper Silk Hosiery Mills, Inc., from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 7th day of March, 1924, granting petitioner's motion for an order directing that arbitration proceed between the parties under the rules of the Silk Association of America of certain disputes and controversies arising out of and in connection with a certain contract.

*Marks & Marks* [*I. Maurice Wormser* of counsel; *Harry M. Marks* with him on the brief], for the appellant.

*Tanzer & Lane* [*Eugene L. Mullaney* of counsel], for the respondent.

CLARKE, P. J.:

This is an appeal by the Propper Silk Hosiery Mills, Inc., vendee, from an order of the Special Term directing that it proceed to arbitrate certain disputes and controversies arising between it and S. A. Wenger & Co., Inc., vendor, out of and in connection with a certain contract dated June 27, 1923.

The petition alleged the making of the following contract

"NEW YORK, *June* 27, 1923.

" GENTLEMEN.— We beg to confirm the following sale made to you for our Yokohama Branch:

" Sixty (60) Bales XX Crack White Japan

" 13 /15 den at $8.80 per lb.

Sales Governed by Raw Silk Rules & Regulations of the Silk Association of America.

Price per pound Cost, Freight and Insurance New York. Import duties or taxes, if levied, to be for Buyer's account. Weights Net Shipping Weights Loss Guaranteed not to exceed 2%.

Shipment from Yokohama — end of July /Aug /Sept.

Marine Insurance to be covered by Shippers.

Reimbursement by 4 mos. sight drafts on New York, for which a Banker's Letter of Credit to be furnished by buyer within ten days prior to time of shipment.

Arbitration. In the event of any dispute arising relative to the fulfillment of any of the above terms, and failing an amicable adjustment, it shall be settled by arbitration, under the rules of the Silk Association of America, the decision of the Arbitrators to be final and binding on both parties.

" Yours very truly,

" S. A. WENGER & CO. INC.,

" S. A. WENGER,

" *Pres. & Treas.*"

A duplicate of this instrument was signed by the Propper Silk Hosiery Mills, Inc., Leo Propper, Pres.

There is no dispute as to the contract entered into between the parties. The petition alleges " that in and by said contract it was provided that in the event of any dispute arising relative to the fulfillment of any of its terms, and failing an amicable adjustment, such dispute should be settled by arbitration under the rules of the Silk Association of America, the decision of the arbitrators to be final and binding on both parties. That a dispute has arisen between your petitioner and said Propper Silk Hosiery Mills, Inc., under said contract with respect to forty bales of crack white Japan,

which bales were destroyed by earthquake and fire in the Yokohama go-downs of your petitioner, on or about September 1, 1923. That said forty bales had been purchased by your petitioner for the account of said Propper Silk Hosiery Mills, Inc., and were marked and appropriated to said contract of June 27, 1923, and stored in your petitioner's go-downs at Yokohama at the risk of said Propper Silk Hosiery Mills, Inc. That upon the destruction of said silk your petitioner duly demanded payment of the purchase price thereof, $46,561.50, from said Propper Silk Hosiery Mills, Inc., but said Propper Silk Hosiery Mills, Inc., refused and neglected and has ever since refused and neglected to pay the same."

The petition further alleged that the petitioner had duly demanded in writing that the disputes arising out of said contract be submitted to arbitration under the rules of the Silk Association of America, but that the Propper Silk Hosiery Mills, Inc., had neglected and refused to submit said dispute to arbitration.

The affidavit interposed on behalf of the Propper Silk Hosiery Mills, Inc., sets forth that the merchandise described in the contract was not a specified or identifiable lot of silk but simply sixty bales of white Japan raw silk of a given grade and thickness; that the petition alleges that forty bales had been purchased by the petitioner and marked and appropriated to said contract and stored in the petitioner's go-downs at Yokohama at the risk of said Propper Silk Hosiery Mills, Inc., and that said silk was destroyed in the Japanese disaster of September 1, 1923; that the Propper Silk Hosiery Mills, Inc., never consented to the appropriation of any particular merchandise against said contract, nor did it have any knowledge that any merchandise was appropriated or otherwise marked by S. A. Wenger & Co., Inc., against said contract; that this allegation of the petition is evidently designed to suggest that title to the merchandise passed to the Propper Silk Hosiery Mills, Inc., and, therefore, the risk of loss had to be borne by it. It alleges that under the terms of the contract of sale no title passed to the Propper Silk Hosiery Mills, Inc.; that twenty bales of said silk were shipped, received and paid for and forty bales were not shipped but as claimed in the petition were destroyed on September first; that assuming these facts to be true the question presented is purely one of law; that the last printed clause of the contract of sale provides: " In the event of any dispute arising relative to the fulfillment of any of the above terms, and failing an amicable adjustment, it shall be settled by arbitration * * *;" that there is no dispute presented by the petition with respect to the fulfillment of any of the terms of the contract; that the only question presented by the petition is one of liability under the

law due to a condition beyond the terms of the contract. It, therefore, submits that the question which the petitioner seeks to have submitted to arbitration does not come within the arbitration clause of the contract of sale and that even if it did, since there is no liability under the law of this State where the contract was made, the submission of the question of law to the arbitrators could only result in an affirmation of the non-liability of the Propper Silk Hosiery Mills, Inc., or a miscarriage of justice in case of a contrary conclusion. It, therefore, asks that the application for an order directing the matter to be submitted to arbitration be denied.

It is apparent upon the face of the contract that it was a c. i. f. contract. It provides:

" Price per pound Cost, Freight and Insurance New York. Import duties or taxes, if levied, to be for Buyer's account. * * * Shipment from Yokohama end of July/Aug./Sept. Marine insurance to be covered by shippers, Reimbursement by four months sight draft on New York for which a Banker's Letter of Credit to be furnished by buyer within ten days prior to time of shipment."

The contract provides for arbitration only " In the event of any dispute arising relative to the fulfillment of any of the above terms." It seems to me that there is no dispute relative to the fulfillment of the terms of the contract. The petition itself shows that the only question arising is whether the Propper Silk Hosiery Mills, Inc., the vendee, is liable for the purchase price of forty bales of merchandise which the petitioner claims it appropriated to the contract and which was subsequently destroyed in the earthquake in Japan. There is no dispute that the silk was destroyed while in the possession of the petitioner and in its go-downs in Japan and by the earthquake. The petitioner claims that by marking the bales and setting them aside for the vendee title passed to the vendee and that it was, therefore, required to stand the loss of its property caused by the convulsion of nature and must pay the agreed upon price. But the contract under consideration was clearly a c. i. f. contract and the law of this State where the contract was entered into by both parties has clearly settled what a c. i. f. contract is and established the liabilities and rights arising thereunder.

In *Seaver* v. *Lindsay Light Co.* (233 N. Y. 273), Judge McLaughlin, speaking for the unanimous court, said: " The meaning of the letters c. i. f. in an executory contract is, and at the time the contract in question was made were, well understood in the commercial world. They mean the cost of the merchandise, insurance thereon, and freight charges to point of destination. (*Thames*

*& Mersey Ins. Co., Ltd.,* v. *United States,* 237 U. S. 19.) Unless there is something in a c. i. f. contract to indicate to the contrary, the seller completes his contract when he delivers the merchandise called for to the shipper, pays the freight thereon to point of destination, and forwards to the buyer bill of lading, invoice, insurance policy and receipt showing payment of freight. * * * When the correspondence and cablegrams are all construed together, as they must be, then it seems to me they clearly indicate an intention on the part of both parties that the delivery was to be made at Chicago and when defendant delivered to a carrier at that point, paid the freight to point of destination, and forwarded the other necessary documents, he had fully completed his part of the contract. * * * Concededly if the merchandise had been lost intermediate the delivery to the carrier and point of destination, the loss would have fallen upon the buyer and not upon the seller."

In *Dwane* v. *Weil* (199 App. Div. 719; affd., 235 N. Y. 527), this court said, Mr. Justice LAUGHLIN writing: " The theory of a c. i. f. contract is that it constitutes a sale of goods by delivery not of goods but of documents, viz., a bill of lading, invoice and policy or certificate of insurance, and that it is incumbent upon the seller to deliver or to tender delivery of them to the buyer within a reasonable time after the date agreed upon for the shipment of the goods, and that on performance of that duty by the seller it becomes the duty of the buyer to accept the documents which will entitle him to receive the goods if they arrive, and to enforce any claim of liability there may be either against the carrier or the insurer, and, therefore, in such cases it becomes immaterial in whom the title was, either at the time of or prior to the delivery or tender of delivery of the documents, and it likewise becomes immaterial whether the goods have been lost in transit before or are so lost after the delivery or tender of delivery of the documents. * * * I am, therefore, of opinion that the agreement for the purchase and sale of the skins was intended as a strict c. i. f. contract, * * * and that, therefore, the defendants fully performed their obligations when the goods were delivered to the carrier and the bills of lading therefor and the insurance thereon were obtained, and they were ready, able and willing to deliver the same to the assignor, for in such circumstances the provisions of the Personal Property Law (§§ 100, 101, as added by Laws of 1911, chap. 571), which would otherwise apply, are not applicable."

In *Smith Co., Limited,* v. *Moscahlades* (193 App. Div. 126) this court said: " This consummated the contract which became

what is known as a ' c. i. f.' contract, which is a well-known form of shipping contract and means that the purchaser pays a fixed price for which the seller furnishes the goods and pays the freight and insurance to the point of delivery and that all risks, while the goods are in transit, are for the account of the buyer. Under such contracts the seller fulfills all of his obligations by putting the cargo on board and forwarding to the purchaser a bill of lading and a policy of insurance of the kind then current and customarily issued in the trade, and if the goods had not been paid for in advance it was customary to present a draft for the purchase price accompanied by the bill of lading and policy of insurance and a credit slip for the insurance and freight if not actually paid for by the shipper, which documents were to be delivered to the purchaser on his paying the draft, and the insurance is for the protection of the purchaser, who assumes all risks after the goods have been placed on board; and this constitutes a delivery by the seller under such a contract and title thereupon passes to the buyer even though it be stated in the contract that delivery was to be made at the point of destination.   [Citing cases.]   *   *   * It is sufficient to say that under the provisions of the Sales of Goods Act such contracts remain as before and the delivery of the goods to the carrier is an unconditional appropriation thereof to the  purposes of the contract and title passes to the buyer even though the purchase price is payable before the purchaser is entitled to the actual delivery of the goods or the documentary evidence of title which in this case was a bill of lading to the order of the seller duly indorsed by it.   *   *   *   Rule 5 of said section 100 is inapplicable for a ' different intention appears ' and the case falls within the express exception prescribed in said section, where, as here, a ' c. i. f.' contract is made.   As already observed, the insurance in such a case is for the benefit of the buyer and the purchase price includes the freight and insurance charges which the seller must pay or for which he must give credit; and under such a contract no inference is permissible that the seller is bound to deliver at the point of destination.   *   *   *   In *Smith Co., Ltd.,* v. *Marano* [267 Penn. St. 107]   *   *   *   it was held that the delivery on board the steamer was a complete delivery and title passed and that the c. i. f. contract was unaffected by the Pennsylvania Sales Act   *   *   *   which is the same as ours, inasmuch as the bill of lading was only retained by the shipper to secure performance of the purchaser's promise to pay."

In *Harper* v. *Hochstim* (278 Fed. Rep. 102), HOUGH, J., writing for the Circuit Court of Appeals, where the plaintiff sued on a c. i. f. contract under which he was to ship from China certain

weasel skins and did not do so but tendered a certain number of skins obtained in New York and upon refusal of acceptance brought suit, said: " If that contract is for what is now widely known as a ' sale c. i. f.,' such sale was by specific agreement to be accomplished or executed by the delivery of documents by vendor to vendee, and not by the physical delivery of the actual goods for which the documents are the evidence of title. The bargain must be kept as made; the buyer can no more refuse the documents and ask for the goods than can the seller withhold the documents and tender the goods; and the documents necessary are a bill of lading and policy of insurance, although additional papers, especially an invoice, are usual. The foregoing is now too well settled to need more than reference to *Thames & Mersey Ins. Co., Ltd.,* v. *United States,* 237 U. S. 19, 26, 35 Sup. Ct. 496, 59 L. Ed. 821, Ann. Cas. 1915D, 1087, and cases there cited; *Landauer & Co.* v. *Craven & Speeding Bros.,* 2 K. B. 94 (1912); *Manbre Saccharine Co.* v. *Corn Products Co.,* 1 K. B. 198 (1919); *Setton* v. *Eberle-Albrecht Flour Co.,* 258 Fed. Rep. 905, 169 C. C. A. 625; *Klipstein & Co.* v. *Dilsizian,* (C. C. A.) 273 Fed. Rep. 473; *Smith Co., Limited,* v. *Moscahlades,* 193 App. Div. 128.  *  *  *

" This question of construction is one of general law, if not general commercial law, and unaffected by any statute of New York, especially the Sales of Goods Act (Consol. Laws, c. 41, §§ 82–158), even assuming that the place of execution of agreement furnishes the law of the contract. That the Sales Act left c. i. f. contracts ' as before ' was specifically held in *Smith Co., Limited,* v. *Moscahlades, supra.*"

It seems to me settled that until a seller under a c. i. f. contract has placed the merchandise on board ship and procured the necessary policy of insurance and paid the freight and forwarded the documents to the buyer he has not performed his contract and title to the goods remains in him. In the matter at bar the petition does not allege that the merchandise was ever delivered on board ship and the necessary documents sent, but, on the contrary, shows that the merchandise was stored in the petitioner's go-downs in Yokohama and there destroyed a month before the time for shipment expired.

In Williston on Sales (2d ed. p. 608) it is stated, referring to a c. i. f. contract: " The seller, however, is under a duty to ship the goods properly and take out the documents required by the contract. His failure to do so is an immediate breach, though the buyer is not bound to pay until the goods have not only been shipped but the proper documents tendered."

Therefore, it seems clear that under the terms of this contract,

which is indisputably a c. i. f. contract, there was no transfer of title prior to the destruction of the goods by the earthquake and that as the seller failed to perform by shipping the goods and paying the freight and insurance and forwarding the proper documents that as matter of law it had no right to recover. There is, therefore, it seems to me, no dispute in regard to the fulfillment of the terms of this contract. There is solely a question of law presented, namely, whether under the contract title had passed so that the loss fell upon the vendee instead of upon the vendor. Therefore, the provisions of the contract providing for arbitration being confined to disputes as to fulfillment of the contract and there being no such disputes the vendee was not required to submit this question of law to merchants unskilled in the law but had the right to call upon the courts to determine it.

It follows, therefore, that the order appealed from should be reversed, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs.

DOWLING, MCAVOY and MARTIN, JJ., concur; SMITH, J., dissents.

SMITH, J. (dissenting):

The order directed that the parties file with the clerk of the committee on arbitration of the Silk Association of America an agreement in form approved by said committee submitting all disputes and controversies arising out of the contract of June 27, 1923, to arbitration. The contract is in form as follows:

" S. A. Wenger & Co., Inc.,
   " 95 Madison Avenue,
      " New York, N. Y.

                              " Telephones Madison Square 6466
                                             6467
                L/C # 14                      6468
" PROPPER SILK HOSIERY MILLS, INC.,
   " 276–5th Avenue,
      " New York, N. Y.

                      " NEW YORK, *June* 27, 1923.

" GENTLEMEN.— We beg to confirm the following sale made to you for our Yokohama Branch:

" Sixty (60) Bales XX Crack White Japan
   13 /15 den. at $8.80 per lb.

" Sales Governed by Raw Silk Rules & Regulations of the Silk Association of America.

" Price per pound, Cost, Freight and Insurance New York. Import duties or taxes, if levied, to be for Buyer's account.

" Weights Net Shipping Weights Loss Guaranteed not to Exceed 2%.

" Shipment from Yokohama — end of July /Aug /Sept.

" Marine Insurance to be covered by Shippers.

" Reimbursement by 4 mos. sight drafts on New York, for which a Banker's Letter of Credit to be furnished by buyer within ten days prior to time of shipment.

" Arbitration. In the event of any dispute arising relative to the fulfillment of any of the above terms, and failing an amicable adjustment, it shall be settled by arbitration, under the Rules of the Silk Association of America, the decision of the Arbitrators to be final and binding on both parties.

" Yours very truly,

" S. A. WENGER & CO. INC.

" S. A. WENGER

" <em>Pres. & Treas.</em>"

The petitioner alleges that on the 27th day of June, 1923 (the date the contract was made), the forty bales referred to in the contract had been purchased by the petitioner for the account of the defendant and were marked and appropriated to the contract and stored in the petitioner's go-downs at Yokohama, at the risk of the defendant; that by reason of the earthquake and the fire in Yokohama the forty bales were destroyed on or about September 1, 1923.

The defendant objects to the application of the arbitration clause in the contract on the ground that only a question of law is involved; that the contract was a c. i. f. contract and could not be performed by the petitioner except by delivery on board ship at Yokohama and that an appropriation of the forty bales to the contract was not a performance thereof. The defendant, therefore, claims that the clause in the contract providing for arbitration " in the event of any dispute arising relative to the fulfillment of any of the above terms" could not apply.

The words in the contract " fulfillment of any of the above terms," mean, without any doubt, performance of any of the contract terms. While the contract in question refers to a " sale " being made by the petitioner to the defendant, there are other words in the contract which seem to indicate that the petitioner was to purchase the goods for the defendant, as the contract refers to " reimbursement " being made by the defendant. The defendant was to furnish sight drafts on New York against the bankers' letter of credit within ten days prior to the time of shipment. The end of July was one time mentioned for shipment from

Yokohama.   A dispute has arisen, therefore, relative to the fulfill-
ment of the terms of the contract.   If there were any terms, the
fulfillment of which was in dispute, the arbitration order was
correct.

It might very properly be that the rules of the Silk Association
and custom of the silk trade would have considerable bearing
upon the disposition of the controversy before the arbitrators,
but these legal questions could be more properly disposed of by the
court in the proceeding.

The order appealed from should be affirmed, with ten dollars
costs and disbursements.

Order reversed, with ten dollars costs and disbursements, and
motion denied, with ten dollars costs.