MILLER & SONS COMPANY, Respondent, *v.* E. M. SERGEANT COMPANY, Appellant.

First Department, May 14, 1920.

**Sales — contract to receive and pay for goods to be shipped in install-ments — place of delivery in absence of specific agreement — Personal Property Law, section 124, subdivision 1 — when contract of sale severable — Personal Property Law, section 126, subdivision 2, construed — failure to deliver goods caused by freight embargo laid by Federal government — action by buyer — counterclaim.**

Where a contract for the sale of goods to be delivered in monthly install-ments provided for a certain price " f. o. b. Solvay, N. Y.," the latter clause did not relate to the place of delivery and the contract being silent on this question, the place of delivery, under section 124, subdivision 1, of the Personal Property Law, was the store or factory of the seller or the place where it kept the goods.

Where the contract provided for the sale of twenty-four carloads of soda to be shipped in two installments each month, payment to be made for each installment, the contract was not entire for the sale of the full amount but was for the sale of two installments each month and was, therefore, severable.

The common-law rule of this State, that the failure of one of the parties to tender or pay for an installment under such contract of sale entitles the

other party to rescind the entire contract, has been changed by section 126, subdivision 2, of the Personal Property Law, which makes each case depend upon the terms of the contract and the circumstances.

Where the failure to deliver installments for one month was due to the fact that the government having taken over the railroads laid a freight embargo and refused a permit for the shipment of said installments at the time, and the seller notified the buyer that the goods were ready for delivery at its factory, the buyer by failing to make arrangements for shipping the goods was guilty of a breach of the contract and cannot hold the defendant liable for its failure to deliver said installments.

Hence, the complaint in an action by the buyer for damages for failure to deliver the two installments should have been dismissed and the seller was entitled to a directed verdict for an installment afterwards shipped and accepted by the buyer.     .

SMITH, J., dissents.     .

APPEAL by the defendant, E. M. Sergeant Company, from a determination of the Appellate Term of the Supreme Court, filed in the office of the clerk of the City Court of the City of New York on the 4th day of February, 1920, affirming a judgment of the City Court of the City of New York in favor of the plaintiff entered upon a directed verdict, and also affirming an order of said City Court, denying defendant's motion for a new trial.     .

*John Ewen* of counsel [*Wilder, Ewen & Patterson,* attorneys], for the appellant.

*David Ray Bernstein,* for the respondent.

PAGE, J.:

Both parties moved for a direction of a verdict, and only questions of law are presented by this appeal. The facts are as follows: On March 30, 1917, the plaintiff and defendant entered into the following contract:

" Messrs. MILLER & SONS COMPANY,
          " 5309 Westminster Avenue,
                    " Philadelphia, Penna.:

" GENTLEMEN.— We have this day sold you twenty-four (24) minimum carloads of about fifty thousand (50,000) pounds each of Solvay brand 58% Light Soda Ash packed in bags of three hundred (300) pounds each for shipment at the rate of one (1) car about the fifth and one (1) car about the twentieth

of each month, January to December both inclusive, of the year nineteen eighteen (1918).

" Price: One dollar and twenty-five cents ($1.25) per one hundred (100) pounds basis of 48% f. o. b. Solvay, N. Y.

" Terms: Thirty (30) days net or less one per cent. (1%) for cash within ten (10) days from date of invoice. Payment in New York City funds, in U. S. gold or its equivalent in currency.

" Should the buyers make default in any payment or become subject to the bankruptcy law, the sellers may at their option cancel or postpone any undelivered portion of the contract.

" It is understood and agreed by the buyers that the goods are for consumption in their own mill and are not to be resold.

" Subject to contingencies beyond the control of either party.

" Invoice weight and tares.

" E. M. SERGEANT CO.

" Accepted,

    " Miller & Sons Co.,

      " Edward C. Miller,

       " *Secretary.*"

All the installments were delivered except those for the month of January, 1918. At that time the railroads of the country were in the possession and under the control of the United States government. An embargo was laid on freight shipments without a special permit on the railroads over which shipments of this merchandise had to be made from Solvay, N. Y., to Philadelphia, Penn. Under these conditions upon January 24, 1918, the defendant wrote to the plaintiff as follows: " We don't suppose there is the slightest possible chance of being able to ship your January cars of Soda Ash. We have had them on order with the works since back in December but it has occurred to us that if you are working on any government business, by writing the railroad company you might possibly get a special permit to have the goods go forward. At any rate permission to have shipment made would have to come from your end so it seems wise for you to get in touch with the railroad and see if you can't get a special embargo permit."

And on January 25, 1918, the defendant wrote in regard to the December shipment which had been delayed *en route* and added: " We wrote you yesterday about the two cars due you this month and hope you will be able to give us some government contract numbers which will enable us to get the goods on the way."

In reply plaintiff wrote to the defendant on February fifth as follows: " In accordance with your suggestion of Jan. 24th, we made application to the Commission on Car Service at Washington, for permit to have Soda Ash, that we purchased from you, shipped to Philadelphia, but are sorry to advise that we received their reply stating that they were unable to issue such permit be ause of the acute congestion in the territory through which our shipments will necessarily have to move. Under these conditions we will have to wait until the present embargo is lifted, and purchase our requirements in this district, which you will appreciate, will entail considerable loss.

" In order to offset this loss, we thought possibly you might consider buying back your contract from us for a lump sum in cash, arranging settlements on a monthly basis.

" Kindly let us know if you would care to consider this proposition, and oblige."

To this letter defendant replied on February sixth: " We have yours of the 5th and in reply regret to say that we would not care to pay you a lump sum for the cancellation of contract we hold with you for Soda Ash. It is your misfortune that railroad conditions have been such as to prevent the January shipments going forward; they automatically become cancelled. We hope that before February is over, the embargo will be lifted so as to permit the shipment of your February car and that conditions will be better throughout the balance of the year."

The embargo was lifted on February 16, 1918, and the plaintiff requested the defendant to ship immediately all soda ash due. In response to this request the defendant shipped the two carloads due for February, but declined to make shipment of the January installment upon the ground that having offered to deliver the two carloads in that month, and the

plaintiff having failed to take the same, the defendant could not be required to deliver that installment in any other month.

Action was brought to recover damages for failure to deliver the two cars in January, and judgment was recovered upon the difference between the market price in January and February, 1918, f. o. b. Solvay, N. Y., and the contract price. From this amount was deducted the price of the last car shipped, for which plaintiff had not paid and which defendant had counterclaimed. The court adopted the plaintiff's contention that delivery was to be made in Philadelphia and that the words " f. o. b. Solvay, N. Y. " were an element of the price and merely meant that the plaintiff was to pay the freight.

The learned justice of the City Court was correct in the ruling that the words " f. o. b. Solvay, N. Y." did not have reference to the place of delivery, but erroneously held that the place of delivery was at the plaintiff's place of business in Philadelphia. The contract was silent as to the place of delivery. Where that is the case the store or factory of the seller, or the place where the goods are kept is the place of delivery. (Pers. Prop. Law, § 124, subd. 1, as added by Laws of 1911, chap. 571; *Gross* v. *Ajello*, 132 App. Div. 25, 27.)

The contract is for the sale of twenty-four carloads of soda ash packed in bags of 300 pounds each for shipment in two installments each month, payment to be made for each installment. The plaintiff claims that the contract was for twenty-four carloads of soda ash, and that it was the duty of the defendant to deliver that number of cars, and if because of contingencies beyond its control it could not make the delivery, the plaintiff was entitled to require delivery at a later date when delivery was possible. The contract, however, was not an entire contract for the sale of twenty-four carloads of soda ash, but was for the sale of twenty-four carloads in two installments each month, for which payment was to be made on each installment. The contract was, therefore, severable. Under the common law of this State the failure of one of the parties to tender delivery or to pay for an installment would entitle the other party to rescind the entire contract. (*Pope* v. *Porter*, 102 N. Y. 366; *Wolfert* v. *Caledonia Springs Ice Co.*, 195 id. 118, 124.) And if the

parties thereafter proceeded under the contract the right to rescind would be lost through a waiver. This rule has, however, been changed by statute. The Personal Property Law (§ 126, subd. 2, as added by Laws of 1911, chap. 571) provides: "Where there is a contract to sell goods to be delivered by stated installments, which are to be separately paid for, and the seller makes defective deliveries in respect of one or more installments, or the buyer neglects or refuses to take delivery of or pay for one or more installments, it depends in each case on the terms of the contract and the circumstances of the case whether the breach of contract is so material as to justify the injured party in refusing to proceed further and suing for damages for breach of the entire contract, or whether the breach is severable, giving rise to a claim for compensation, but not to a right to treat the whole contract as broken." (See, also, *Helgar Corporation* v. *Warner's Features*, 222 N. Y. 449, 452.) In the present case neither party claims that the breach of the contract, although it occurred in respect to the initial installment, was so substantial as to justify a rescission of the entire contract. Each party claims that the other failed to perform and each claims that he fully performed. Neither party has admitted its failure and sought to excuse it because it was due to contingencies beyond its control. The sole question, therefore, is which party failed to perform. As we have heretofore stated, the contract being silent as to the place of delivery, the factory at Solvay, N. Y., where the goods were kept, was the place of delivery. When the defendant notified the plaintiff that the goods were there ready for delivery and requested plaintiff to make arrangements for shipping them, the defendant performed, and the failure of the plaintiff to accept the delivery was a breach of the contract on its part. As to the January installments it had no claim upon the defendant. The justice of the City Court should have granted the defendant's motion, dismissed the complaint and directed a verdict for the defendant on its counterclaim for the last carload delivered in December, 1918, for which the plaintiff admitted it had not paid.

The determination of the Appellate Term and the judgment of the City Court will, therefore, be reversed, with costs to

the appellant in this court and the Appellate Term, and judgment directed for the defendant for the sum of $697.81, with interest thereon from January 1, 1918, together with the costs of the action.

CLARKE, P. J., DOWLING and GREENBAUM, JJ., concur; SMITH, J., dissents.

Determination and judgment reversed, with costs in this court and in the Appellate Term, and judgment ordered for defendant for $697.81, with interest from January 1, 1918, and costs.