HERMAN SCHOPFLOCHER, Plaintiff, *v.* THE ESSGEE CO. OF CHINA, INC., Defendant.

First Department, July 1, 1921.

Sales — action to recover for delay in delivery of goods sold — goods sold in New York city on c. i. f. contract to be shipped from Japan — goods consigned to seller and insured in his name — place of delivery was city of New York — whether buyer called for delivery at seller's place of business is question for jury — measure of damages — market value in New York city at time of breach admissible — facts to be considered in determining whether goods delivered in reasonable time — when buyer entitled to recover.

In an action by a buyer of goods to recover damages for unreasonable delay in making delivery it appeared that both the buyer and the seller were residents of the city of New York and that the goods were to be shipped from Japan in June, July and August, 1917, in about equal shipments; that the buyer performed his agreement to furnish a letter

of credit and pay the duty on the goods and also paid approximately $350 in order that the merchandise might be shipped by express from the Pacific coast; that the contract provided that the price stated was " C. I. F. New York;" that the goods were shipped to the seller and were insured in his own name and upon arrival in the city of New York were first stored in the customs warehouse and upon payment of duty were taken to another warehouse where they were deposited and stored in the seller's name and delivery was made by warehouse receipt from time to time.

*Held*, that the " C. I. F. New York " clause in the contract related merely to the price of the goods and that under the facts of the case it was not intended by the parties that the contract was a strict c. i. f. contract under which the buyer would have assumed responsibility for delay in transportation, and, therefore, the place of delivery was at the office or place of business of the seller in the city of New York.

It was incumbent upon the buyer to call upon the seller to deliver the goods to him at the seller's place of business or wherever the goods were in New York city, and whether or not he did so call upon the seller for delivery was a question of fact which should have been submitted to the jury.

On the question of damages the buyer should have been permitted to prove the market value of the merchandise in the city of New York at the time of the alleged breach of the contract.

On the question as to whether there had been an unreasonable delay in the delivery of the goods it was proper to consider the fact that in the usual course of transportation it requires, on the average, about two months for goods to reach New York city from Japan, unless the goods are shipped from the Pacific coast by express, and that the buyer paid approximately $350 for shipment by express from the Pacific coast.

If the buyer was ready to accept the delivery and the goods were not delivered within a reasonable time, he was entitled to succeed upon proof of his damages.

Motion by the plaintiff, Herman Schopflocher, for a new trial upon a case containing exceptions, ordered to be heard at the Appellate Division in the first instance after the dismissal of the complaint at the close of the plaintiff's case upon a trial before the court and a jury at the New York Trial Term, November, 1920.

*Burnstine & Geist*, for the plaintiff.

*Kramer & Swartz*, for the defendant.

Merrell, J.:

The action is brought by Herman Schopflocher against The Essgee Co. of China, Inc., to recover damages for an

alleged delay on the part of the defendant in delivering a large quantity of strawbraid purchased under a contract made on or about the 4th day of May, 1917. The contract in question, which was made in the city of New York, mentioned 621 Broadway, room 722, as defendant's place of business, and, so far as material, reads as follows:

" Original                 NEW YORK, U. S. A., *May 4th,* 1917.
" Sold to
" Mr. M. H. STEINFELS
      " 55 Mercer Street
          " New York City.
" Bought from The ' Essgee ' Co., of China, Inc., Acting Agents for Messrs. Miyake-Gumi Ltd., Kobe, Japan.
      " 50,000 Pieces of 3′ End Jap Extra Quality at 18½ cents @ piece C. I. F. New York. 4/5 m/m. Artl. No. 3639.
      " 50,000 Pieces of 3′ End Jap First Quality at 17½ cents @ piece C. I. F. New York. 4/5 m/m. Atkl. No. 3639.
" Duty to be paid by the undersigned purchaser at the rate of 15% upon presentation of Invoices.
" Quality as natural sample shown, usual variations.
" Shipment from Japan June, July, August in about equal shipments.
" Buyer agrees to furnish a letter of credit at 4 months sight draft.
" Accepted                          Buyer
          " THE ' ESSGEE ' CO. OF CHINA, INC.
                        " D. SCHRATTER,
                              " *President.*
" Shipment has to be made via overland."

M. H. Steinfels, mentioned in the contract, was a brother-in-law of the plaintiff, and it was conceded upon the trial that the plaintiff was the real party in interest. As provided in the contract, the plaintiff furnished the letter of credit therein referred to and paid the duty on the merchandise, upon a claim made by the defendant that such duty was due. The plaintiff also paid approximately $350 to the defendant in order that said merchandise might be shipped by express. The goods ran 1,000 pieces to the bale, thus making 100 bales in all.

Evidence was given by the defendant tending to show that the merchandise was shipped from Japan substantially in accordance with the contract, and the defendant claimed upon the trial that had plaintiff called for the goods the defendant would have delivered them within a reasonable time. On the other hand, the plaintiff testified that he was almost an every-day caller at defendant's New York office, and was constantly demanding the goods, which concededly he had paid for, and that he accused defendant's representative of intentional delay and of selling his goods to other parties.

It was established upon the trial that the first of the goods actually came into the plaintiff's possession September 11, 1917, and the last ten bales on August 3, 1918.

The plaintiff claims damages for alleged unreasonable delay on the part of the defendant in delivering the last three lots which were delivered, respectively, on December 13, 1917, February 13, 1918, and August 3, 1918, twenty-six bales in all.

It is the contention of the defendant that under the contract the place of delivery was in Japan, and that it performed its full duty by delivering the merchandise on board ship in Japan. The plaintiff, however, says that the defendant at all times understood that the place of delivery was to be in the city of New York. Plaintiff claims that he is entitled to the damages he has suffered, based upon the market price of the merchandise in New York city.

While the evidence was conflicting respecting the time when the merchandise was shipped from Japan and here received, there is no dispute as to the method of shipment adopted by the defendant.

As above noted, the plaintiff duly delivered to the defendant his letter of credit, thus paying for the goods in advance. The defendant shipped the goods with others from Japan, consigning and insuring them in its own name. Upon arrival in the city of New York they were first stored in a customs warehouse and upon payment of the duty were taken to the warehouse of R. H. Comey & Co. in Brooklyn, where they were deposited and stored in the defendant's name. The defendant did not disclose the name of the plaintiff to the Japanese shipper or to any carrier or warehouseman, and no evidence of title to the goods was delivered to the plaintiff,

except the warehouse receipts for a few bales at a time upon the dates when plaintiff testified he received the goods. It appeared on the trial that someone in the defendant's office had, subsequently to the receipt of the goods, placed plaintiff's name in lead pencil across the face of certain of these bills of lading, evidently for identification purposes.

David Schratter, an officer of the defendant, testified that the plaintiff had requested the defendant to store the goods in the defendant's name and to handle them as the defendant chose. The plaintiff denies this and says that he was constantly demanding the delivery of the goods and that he told defendant's representatives that he would hold them responsible for delay in delivery. From the facts thus disclosed it appears that the parties intended that the merchandise was to be delivered to the plaintiff in the city of New York. The court, however, has held, as a matter of law, that the place of delivery was in Japan, and refused to permit the plaintiff to prove the market value of the merchandise in New York at the time of the alleged breach.

The contract in question, as above set forth, contained the expression, " C. I. F. New York." It was admitted upon the trial that such letters meant, " cost plus insurance and freight to New York." The term appears in the clause of the contract relating to price, and has, therefore, very little bearing upon the question of the place of delivery. (*Miller & Sons Co.* v. *Sergeant Co.*, 191 App. Div. 814; *Maddaloni Olive Oil Co., Inc.,* v. *Aquino,* Id. 51; *Mee* v. *McNider,* 109 N. Y. 500; *Seaver* v. *Lindsay Light Co.,* 111 Misc. Rep. 553.) It is apparent that the term used had a distinct and clear meaning to the parties who used it, and that as used in the contract in question it related purely to the price to be paid. The burden rested upon the purchaser to pay the cost price of the goods in Japan plus insurance and freight to New York. The duty rested, of course, upon the seller to deliver the goods somewhere to the buyer. Had the parties considered that the contract was a strict c. i. f. contract the seller would have insured the goods in the name of the buyer and would have caused the bills of lading to have been made out in his name and forwarded to him, and would have taken the necessary

steps to free the seller from responsibility respecting further delay and delivery.

The respondent seems to rely upon the decision in *Smith Co., Ltd.,* v. *Moscahlades* (193 App. Div. 126) in support of its contention that the place of delivery of the merchandise in question under the contract was Japan. The plaintiff in the last-mentioned case was a Newfoundland corporation, having its office at St. Johns. It had no branch office and transacted no business here. The defendants were engaged in business within the city of New York as importers and exporters of fish. The contract in question used the term, " c. i. f." This court held in respect to the aforesaid contract, as follows:

" This consummated the contract, which became what is known as a ' c. i. f.' contract, which is a well-known form of shipping contract and means that the purchaser pays a fixed price for which the seller furnishes the goods and pays the freight and insurance to the point of delivery, and that all risks, while the goods are in transit, are for the account of the buyer. Under such contracts the seller fulfills all of his obligations by putting the cargo on board and forwarding to the purchaser a bill of lading and a policy of insurance of the kind then current and customarily issued in the trade, and if the goods had not been paid for in advance it was customary to present a draft for the purchase price, accompanied by the bill of lading and policy of insurance and a credit slip for the insurance and freight if not actually paid for by the shipper, which documents were to be delivered to the purchaser on his paying the draft, and the insurance is for the protection of the purchaser, who assumes all risks after the goods have been placed on board; and this constitutes a delivery by the seller under such a contract and title thereupon passes to the buyer even though it be stated in the contract that delivery was to be made at the point of destination."

In the case at bar both the parties resided in the city of New York, and both parties had an office there. The contract did not mention any place in Japan from which the goods were to be shipped, and the seller did not consign the goods to the buyer, but consigned them to itself in the city of New York, insured the goods in the seller's own name, and placed the goods in a warehouse in Brooklyn and took warehouse

receipts in the name of the seller. The term " C. I. F. New York " appears only in that portion of the contract relating to the price. It follows that, under the decision of this court in the case of *Miller & Sons Co.* v. *Sergeant Co.* (*supra*) the place of delivery would be at the office or place of business of the seller in the city of New York. Moreover, the seller has so interpreted the contract. Although the plaintiff paid for the goods in advance, the seller never attempted to make any deliveries at any place, except in the city of New York by the delivery of warehouse receipts. It is clearly shown that it was the intention of the parties that the city of New York should be the place where the goods were to be delivered. While the case of *Miller & Sons Co.* v. *Sergeant Co.* (*supra*) involved the construction of a contract which used the term " f. o. b.," the same reasoning applies to the use of the term " c. i. f." It was, of course, incumbent upon the purchaser to call upon the defendant to deliver the goods to him at the defendant's place of business or wherever the goods were in Brooklyn. This the plaintiff says he did, and that is a question of fact which should have been submitted to the jury. The place of delivery being in the city of New York, the court should have submitted to the jury the disputed facts, and should have permitted the plaintiff to show the market value of the merchandise in the city of New York at the time of the alleged breach.

It is claimed by the appellant, and seems to have been practically admitted upon the trial, that it requires on the average about two months for goods to reach New York city from Japan, unless the goods are shipped from a Western seaport by express. The defendant admitted that the plaintiff had paid approximately $350 for shipment by " silk train " (overland express), which fact quite clearly shows that the plaintiff was anxious to receive the goods and to obtain them as early as possible. Such fact also should be considered in determining whether or not the goods were delivered within a reasonable time. The use of the words, " Shipment from Japan June, July, August in about equal shipments," as used in the contract, were clearly inserted to enable the parties, who knew the custom and the length of time it usually takes for a shipment to reach New York, to define

the period within which the goods would in all probability be delivered to the plaintiff. The plaintiff testified, as above noted, that he told Schratter that he must have the goods as soon as possible, and stated: " I want the merchandise during August, September and October to deliver in New York as per my contract, and I will hold you responsible if I don't get it in that time." It is quite apparent that when this conversation took place the plaintiff, at least, expected to receive the goods shipped from Japan in June during the month of August; those shipped in July during the month of September, and those shipped in August during the month of October. If the plaintiff was ready to accept the deliveries and the goods were not delivered within a reasonable time, the plaintiff was entitled to succeed upon proof of his damages.

The plaintiff's exceptions are sustained and plaintiff's motion for a new trial granted, with costs to the plaintiff to abide the event.

CLARKE, P. J., LAUGHLIN, SMITH and PAGE, JJ., concur.

Exceptions sustained and motion for new trial granted, with costs to plaintiff to abide event. Settle order on notice.