PERCY KENT COMPANY, Appellant, *v.* MEYER SILBERSTEIN, as Surviving Partner of the Firm of S. SILBERSTEIN & SON, Respondent.

First Department, February 17, 1922.

Sales — contract for sale of goods to be manufactured by third person, delivery in installments at mill during certain months, " shipping instructions later "— obligation of buyer to send instructions — no primary obligation on part of seller to notify buyer that goods were ready for shipment — breach of contract by buyer in failing to give shipping instructions before end of first month and thereafter refusing to give any instructions and canceling contract — Personal Property Law, § 124, subd. 3, not applicable — buyer having canceled contract on sole ground that goods had not been delivered in time, not entitled to claim failure by seller to comply with Personal Property Law, § 124, subd. 3 — under Personal Property Law, § 126, it was error to dismiss seller's complaint as to last three installments.

Under a contract for the sale of goods to be manufactured by a third person, delivery to be made at mill, 50,000 yards each, September, October, November and December, " shipping instructions later," it is a good delivery of the September installment on the part of the seller if the goods were at the mill ready for shipment at any time during September.

The obvious purpose of the words " shipping instructions later " was to put the obligation upon the buyer to send instructions before September or early enough in September to enable the seller to ship the goods in accordance therewith, and there was no primary obligation on the part of the seller to notify the buyer that the goods were ready for shipment, for the seller had the right to assume that the buyer would send shipping instructions before the end of September.

The buyer having failed to give shipping instructions before the end of September, and thereafter having refused to give any shipping instructions when requested so to do by the seller, and having canceled the agreement, the contract was breached by him.

Subdivision 3 of section 124 of the Personal Property Law, providing that " where the goods at the time of sale are in the possession of a third person, the seller has not fulfilled his obligation to deliver to the buyer unless and until such third person acknowledges to the buyer that he holds the goods on the buyer's behalf * * *," has no application, for there is no proof that the goods were in existence when the contract was made, but on the contrary, there is proof that they were to be manufactured.

Moreover, the buyer was not in a position to claim that the seller had failed to comply with the provision requiring it to obtain an acknowledgment from the manufacturer that the latter was holding the goods for him, for the reason that he canceled the contract upon the sole ground that the goods had not been delivered in time.

Under section 126 of the Personal Property Law, the trial court erred in dismissing the seller's complaint as to the October, November and December shipments.

APPEAL by the plaintiff, Percy Kent Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 22d day of January, 1921, upon the dismissal of the complaint upon the merits at the close of the plaintiff's case, and also from an order

entered in said clerk's office on the 14th day of February, 1921, denying plaintiff's motion to resettle said judgment.

*Edward M. Grout* and *Paul Grout* [*Edward M. Grout* of counsel; *Dean Potter* with him on the brief], attorneys for the appellant.

*Burnstine & Geist* [*Henry C. Burnstine* of counsel], for the respondent.

GREENBAUM, J.:

Plaintiff sued upon two causes of action for the alleged breach of two contracts of similar import made on April 10 and 11, 1918, respectively, whereby plaintiff agreed to sell and deliver and defendant to accept under each contract 200,000 yards of sheeting, William Iselin & Co. make, at twenty-two cents per yard; terms 3–10; shipment, delivery at mill 50,000 yards each September, October, November and December, 1918; freight allowance up to New York; " shipping instructions later."

The alleged breach of these contracts is set forth in the complaint of the plaintiff as follows: " VI. Thereafter the plaintiff procured said goods to be manufactured pursuant to the said contract by the firm of William Iselin and Company and had the same ready at the mill for delivery at the rate of approximately 50,000 yards each in September, October, November and December, 1918, according to the said contract and to the custom in the cotton goods trade, and notified the defendant that the same were ready for shipment and delivery, and offered to deliver the same pursuant to said contract, but the defendant failed and refused to give shipping instructions for said goods and failed and refused to receive the same and to pay therefor, and notified the plaintiff that he would not receive the same, and the plaintiff thereafter and upon notice to the defendant sold the said goods in open market for and on account of the defendant and at the best prices obtainable therefor. Thereby the defendant broke the said contract, to the damage of the plaintiff in the sum of $12,765.77, payment of which the plaintiff demanded of the defendant on or about the 10th day of January, 1919, and which the defendant refused to pay."

The determination of the rights of the parties requires an interpretation of the agreement and a consideration of the effect of certain written communications which passed between them. Under date of October 5, 1918, defendant (buyer) wrote to plaintiff (seller) stating: " Owing to your lateness in delivery on the above contracts we will ask you to kindly cancel these as we will accept no further deliveries." Plaintiff wrote to defendant on October seventh, before its receipt of defendant's letter dated October fifth, as follows: " We enclose invoice covering 4 yard sheetings held at

mill against your contract April 11th and 13th, 1918. Will you kindly give us shipping instructions for this lot and also for the October and November and December portions if possible. If you cannot give us shipping directions now for the November and December portions, please let us have instructions on the October portion."

Plaintiff replied to the letter of October fifth as follows: " We are unable to follow your request to cancel as the September portion of goods, namely 100,000 yards are all ready at the mill and were all ready before September 30th and we have been awaiting your shipping instructions. We have received the invoice from William Iselin & Co., who sold us these goods, under date of September 30th, for the entire lot, and we now await your instructions, having in turn sent you invoice."

Defendant replied by letter dated October ninth, the material portion of which reads as follows: " Due to the fact that you have been late on delivery on this contract we cancelled same on the date of October 5th, and we cannot at this time accept these goods."

The defendant thus took the position that the goods, not having been delivered in September, as required by the contract, he was entitled to abrogate it and was justified in refusing to accept the goods. On the other hand, plaintiff contended that defendant having failed to send shipping instructions as required by the contract, it was unable to make shipment during September.

Under the contract it would be a good delivery of the September installment on the part of the plaintiff if the goods were at the mill ready for shipment at any time during September. The obvious purpose of the words " shipping instructions later " was to put the obligation upon the buyer to send instructions before September or early enough in September to enable the seller to ship the goods in accordance with such instructions. There was no primary obligation on the part of the seller to notify the buyer that the goods were ready for shipment. The seller had the right to assume that the buyer would send shipping instructions before the end of September. Defendant having failed to give shipping instructions before the end of September and thereafter having refused to give any shipping instructions, when requested so to do by plaintiff, and having canceled the agreement, the contract was breached by him.

After this action was begun the buyer for the first time asserted that plaintiff was not entitled to a recovery by reason of its failure to establish a delivery as required by section 124, subdivision 3, of the Personal Property Law (as added by Laws of 1911, chap. 571), which reads as follows: " 3. Where the goods at the time of sale are in the possession of a third person, the seller has not ful-

filled his obligation to deliver to the buyer unless and until such third person acknowledges to the buyer that he holds the goods on the buyer's behalf * * *."

Subdivision 3 refers to goods which are in the possession of a third person at the time of the sale and has no application here. There is no proof that the goods involved in the contract were in existence when the contract was made. On the contrary, the proof is that the goods were to be manufactured. The following clause in the contract indicates that the goods were to be manufactured: "If the production of mills be curtailed during the time above named by strikes or lockouts, to counteract strikes or any unavoidable casualty, shipments will be made proportionate to the production."

Not only has section 124, subdivision 3, no application to this case, but the buyer was not in a position to claim that plaintiff had failed to comply with the provision requiring it to obtain an acknowledgment from the manufacturer that the latter was holding the goods for him for the reason that he canceled the contract upon the sole ground that the goods had not been delivered in time.

It is also our opinion that under section 126 of the Personal Property Law (as added by Laws of 1911, chap. 571) the learned trial court erred in dismissing the complaint as to the October, November and December shipments. Section 126 reads:

" § 126. Delivery in installments. 1. Unless otherwise agreed, the buyer of goods is not bound to accept delivery thereof by installments. 2. Where there is a contract to sell goods to be delivered by stated installments, which are to be separately paid for, and the seller makes defective deliveries in respect of one or more installments, or the buyer neglects or refuses to take delivery of or pay for one or more installments, it depends in each case on the terms of the contract and the circumstances of the case whether the breach of contract is so material as to justify the injured party in refusing to proceed further and suing for damages for breach of the entire contract, or whether the breach is severable, giving rise to a claim for compensation, but not to a right to treat the whole contract as broken."

This section has been interpreted in *Helgar Corporation* v. *Warner's Features* (222 N. Y. 449, 453, 454) in the following language: " The vendor who fails to receive payment of an installment the very day that it is due, may sue at once for the price. But it does not follow that he may be equally precipitate in his election to declare the contract at an end. (Williston, p. 823; *Beatty* v. *Howe Lumber Co.,* 77 Minn. 272, and cases there cited; *Graves* v. *White,* 87 N. Y. 463, 466.) That depends upon the question whether the default is so

substantial and important as in truth and in fairness to defeat the essential purpose of the parties. Whatever the rule may once have been, this is the test that is now prescribed by statute. The failure to make punctual payment may be material or trivial according to the circumstances. We must know the cause of the default, the length of the delay, the needs of the vendor, and the expectations of the vendee. If the default is the result of accident or misfortune, if there is a reasonable assurance that it will be promptly repaired, and if immediate payment is not necessary to enable the vendor to proceed with performance, there may be one conclusion. If the breach is willful, if there is no just ground to look for prompt reparation, if the delay has been substantial, or if the needs of the vendor are urgent so that continued performance is imperilled, in these and in other circumstances, there may be another conclusion. Sometimes the conclusion will follow from all the circumstances as an inference of law to be drawn by the judge; sometimes as an inference of fact to be drawn by the jury."

This court applied the same rule in *Miller & Sons Co.* v. *Sergeant Co.* (191 App. Div. 814, 818, 819) in favor of a vendee.

The judgment should be reversed and a new trial ordered, with costs to appellant to abide the event.

Clarke, P. J., Laughlin, Smith and Merrell, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.