PORTLAND SEED COMPANY, Plaintiff, v. GUSTAV F. HERBST and Others, as Executors, etc., of ROBERT HERBST, Deceased, Defendants.

Supreme Court, New York County, January 13, 1932.

*Frederick T. Case*, for the plaintiff.

*Dixon & Holmes*, for the defendants.

SHIENTAG, J. The defendant contracted to sell to the plaintiff a quantity of vetch seed. Shipment was to be made from Europe to Portland, Ore., the buyer's city, and the buyer was to pay the agreed price upon presentation of sight draft with shipping docu-

ments or delivery order attached. The price provision covers "cost, insurance and freight to Portland, Oregon." The quality of the seed is specified as "Purity 97%, Germination 85% at point of delivery."

The seed was duly shipped, and the buyer paid the agreed price upon presentation of the documents. When the seed arrived at Portland it was discovered to be mouldy, rotten, of almost no germinability, and practically worthless. The buyer brings this suit to recover the price paid, together with necessary payments for customs duties, freight handling, demurrage, brokerage commissions and inspection, and anticipated profits.

If the "point of delivery" at which the quality of the seed was to be measured was Portland, Ore., it is not disputed that the buyer is entitled to a refund of his money. If, on the other hand, the "point of delivery" was Europe, the buyer's rights depend upon the adequacy of his proof as to the worthless character of the seed at the time of shipment.

We are not here dealing with a strict C. I. F. contract, within the rule laid down in *Seaver* v. *Lindsay Light Co.* (233 N. Y. 273). The insurance was for the account of the seller and the bill of lading was taken in the name of the seller's agent. On the other hand, this case is not like *Cundill* v. *Millhauser Corp.* (257 N. Y. 416), in which the court held there was no magic formula in the typewritten symbols C. I. F. when the contract provided "no arrival, no sale" and "Net cash against shipping documents payable upon arrival of steamer."

The fact that we are dealing with a form of C. I. F. contract does not foreclose the question of what is meant here by the phrase "point of delivery." Let us assume that beneficial ownership passed to the buyer upon shipment and the act of the seller in taking a bill of lading to the order of his own agent operated to retain a title "only for the purpose of securing performance by the buyer of his obligations under the contract." (Pers. Prop. Law, § 101, subd. 2; *Standard Casing Co.* v. *California Casing Co.*, 233 N. Y. 413.) But the fact that title, for certain purposes, passes to the buyer upon shipment does not mean that delivery is then complete. (Williston Sales, § 469; H. Goitein, "The Passing of the Property and the Risk under a C. I. F. Contract," 43 L. Q. Rev. 81.) Delivery is defined in the New York Personal Property Law, section 183, as "transfer of possession." Until the seller transfers the bill of lading or makes out a delivery order, it is hard to find any indicia of possession in the buyer. The fact that delivery, for purposes of fixing a market for the ascertainment of damages, is held to be made at the point of shipment (*Seaver* v. *Lindsay Light Co., supra*)

does not appear to be controlling where the question is how the contracting parties used the word " delivery " and where the indications are that the term was distinguished from " shipment." *Schopflocher* v. *Essgee Co. of China, Inc.* (197 App. Div. 781) shows that we are dealing not with a firm rule of substantive law but with a question of contractual interpretation.

In the instant case, however, it is unnecessary to decide whether the quality specification " at point of delivery " modifies the usual substance of a C. I. F. agreement, since there is evidence that even at the point of shipment the seed was below contract quality, and judgment must be given for the plaintiff upon that ground even if the defendant's interpretation of the contract be accepted.  It is shown that upon discovery of the condition of the seed the seller sought for evidence of sea damage in vain.  Chemical analysis failed to reveal the presence of salt in sufficient quantity to indicate contact with sea water.  Inquiries as to other goods carried in the same hold failed to reveal traces of similar damage.  While there is no legal presumption that goods damaged at receipt were damaged at shipment, it is a fair inference of fact from the condition of the seed upon arrival and the defendant's failure to discover any source of damage in transit upon which a claim for insurance could be based, that the goods did not meet the contract specifications even upon shipment.  Such an inference seemed proper in *Intermountain Farmers Equity* v. *Norris* (39 Ida. 685) and *Truschel* v. *Dean* (77 Ark. 546; 92 S. W. 781).  To reject all inferences of earlier condition from evidence of later condition, as defendant's counsel asks, would be to deny the weight of all evidence. There is nothing in the cited case of *Niehoff-Schultze Grocer Co.* v. *Gross* (205 App. Div. 67) which compels such blindness.  The plaintiff has established its right to judgment for the purchase price, the sum of $3,207.53, and the additional sum of $751, representing customs charges and the cost of freight, handling and demurrage. It failed to establish other items of damage claim.

Verdict is directed in favor of the plaintiff in the sum of $3,958.53, with interest as demanded in the complaint.  Exception to defendants, who are allowed a stay of execution of twenty days and thirty days to make a case.  Settle order.