LOUIS LOWINSON, Appellant, *v.* JACOB NEWMAN, Respondent.

First Department, May 19, 1922.

Sales — action by seller to recover for breach of contract — rejection of goods delivered on ground that they did not conform to contract and payment back of purchase price — seller had right, within period of contract, to make new tender of goods conforming to contract — buyer not in position to rescind at time of second tender of goods — rejection of second tender of goods on ground that contract had been rescinded waived ground that second tender was in excess of goods ordered.

Where goods are rejected by a buyer after they have been paid for by him, on the ground that they did not conform to the contract, and the seller repays the purchase price, the seller has the right, within the period of the contract, to make a subsequent tender of goods conforming thereto, and if they do so conform, the buyer is bound to accept them.

The rejection by the buyer of the goods first tendered and the repayment of the purchase price by the seller did not work a rescission of the contract.

The buyer was not in a position to rescind the contract at the time of the second tender for his position had not been altered to his disadvantage by the delivery of goods which did not conform to the contract, and furthermore, there was no

evidence to show that the buyer intended that his rejection of the goods first delivered constituted a rescission of the contract.

The buyer having rejected the second tender on the sole ground that he had rescinded the contract by reason of the erroneous delivery of goods not conforming to the contract, will be held to have waived any objection based on the ground that the second tender was of goods in excess of the amount ordered, which objection he might otherwise have made by virtue of section 125 of the Personal Property Law.

APPEAL by the plaintiff, Louis Lowinson, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 29th day of March, 1921, upon the verdict of a jury rendered by direction of the court.

*Bloomberg & Bloomberg* [*I. Maurice Wormser* of counsel; *John E. Leddy* with him on the brief], for the appellant.

*McLaughlin & Stern* [*Martin Lippman* of counsel; *Leo C. Stern* with him on the brief], for the respondent.

MERRELL, J.:

The action was to recover the sum of $4,077.57 damages, together with interest, for the alleged breach by defendant of a written contract for the sale of cotton goods. On or about October 9, 1918, the defendant ordered of the plaintiff 2,000 pieces of plain cotton cloth, " C. L. Collins & Co. make," at fifteen and one-half cents per yard, delivery to be made in December, 1918, or January, 1919, " sooner if can." On October 31, 1918, the plaintiff delivered to the defendant 446 pieces of said merchandise and the defendant paid for the same on the day following. On November 18, 1919, the plaintiff delivered to the defendant 324 pieces of the cloth, for which on November twentieth the defendant duly paid the plaintiff the contract price. This made 770 pieces, and left a balance of 1,230 pieces still to be delivered. On or about December 16, 1918, the plaintiff delivered to the defendant 1,244 pieces of cotton goods noted on the invoice to be " Collins goods," the invoice relating to the contract for the 2,000 pieces. While this delivery of December 16, 1918, exceeded by fourteen pieces the balance of the goods due under the contract, the defendant accepted the same and paid therefor at the contract price on the day of delivery. Within a week thereafter the defendant discovered that the 1,244 pieces of goods contained in the December 16, 1918, invoice, and which were marked " Collins goods," were not of the " C. L. Collins & Co. Make," covered by the contract. Immediately thereafter and on December 23, 1918, the defendant wrote the plaintiff that the goods were not in accordance with

the make purchased by them under the contract, and that they then rejected the entire lot and requested the immediate return of the moneys which they had paid therefor, and threatened, unless repayment was made, that the same would be placed in the hands of their attorneys for adjustment. On December twenty-sixth the plaintiff returned to the defendant his check for $11,408.22 given in payment for the December sixteenth shipment of goods, and on the same day the defendant acknowledged receipt thereof " in payment of the 1244 pcs. of 64 x 60 .... 38½" .... 5.35 cloth returned to you, being the merchandise covered by your invoice of December 16, 1918, and which we were compelled to reject as not being in accordance with our contract."

Nothing further was heard of the matter until on January fifteenth the defendant wrote the plaintiff quoting a communication from his mill to the effect that shipment to the defendant of thirty-one bales of goods had been delayed owing to a railroad embargo. On the same day and immediately upon receipt of this communication the defendant wrote the plaintiff, returning plaintiff's invoice sent in his letter of January fifteenth upon the ground stated by defendant that " the contract C4420 was completed with your invoice of Dec. 16th, 1918, which closed our records on this contract." On the day following the plaintiff wrote the defendant as follows:

" New York, *January* 16, 1919.

" Messrs. Rothschild & Newman,

" New York City:

" Gentlemen.— Your favor of the 15th, returning our letter of the same date, and bill of January 14th, received.

" We note you state that our invoice of December 16, 1918, completed your records on this contract. As the bill of December 16th, was an error and credited to you, and the money returned, it left the contract still in force with the one uncompleted delivery, which our invoice of January 14th (again enclosed) completes.

" As stated in our letter of January 15th, these goods are being held merely due to railroad embargo against New York.

" Yours very truly,

" LOUIS LOWINSON."

And on the same day the defendant wrote the plaintiff, in reply, again returning plaintiff's invoice and reasserting defendant's position that the contract had been completed and defendant's records with reference thereto closed.

It is plain from the correspondence that the plaintiff acknowledged that the delivery of the 1,244 pieces, purporting to be the balance

of the contract on December 16, 1918, was not of the goods covered by the contract, and, after the same had been delivered and paid for, accepted a return of the goods, returning to the defendant the moneys which he had paid therefor.

The position of the plaintiff is that, although there had been a faulty delivery on December 16, 1918, of the balance of the goods contracted, nevertheless, his tender of delivery of the 1,240 pieces on January fourteenth was within the contract period, and that the defendant was bound to accept the same.

The defendant, on the other hand, contends that the delivery of the goods covered by the contract was completed on December 16, 1918, and paid for by the defendant two days later, and that such transaction closed the contract.

We are of the opinion that the rejection by the defendant of the goods shipped on December 16, 1918, and the repayment to the defendant by the plaintiff of the purchase price thereof, did not work a rescission of the contract denying the plaintiff the right on or before the last day of January, 1919, to complete delivery. Upon discovery of the faulty delivery of December sixteenth the defendant took no steps to rescind the contract. Defendant merely rejected " this entire lot " and demanded repayment of the amount paid therefor by return mail. Plaintiff acceded to defendant's demand, took back the goods, and returned to defendant his check given in payment therefor. There was no intimation on the part of defendant but that the contract still remained in full force, and that plaintiff would be expected to deliver the balance of the goods contracted for within the contract period and before the last day of January, 1919. The tender that was actually made by plaintiff in January, 1919, was of either thirty-one or thirty-three bales, said bales conceded to contain 1,240 pieces of the goods covered by the contract. No claim is made by the defendant but that the goods tendered were of the kind covered by the contract, nor did the defendant refuse to accept the goods tendered because the thirty-one or thirty-three bales contained an excess of ten pieces beyond the amount required to complete the contract.

We do not think the defendant was in any position to rescind his contract with plaintiff when he first attempted so to do upon plaintiff's tender of the balance of the goods in January, 1919. The law is well settled that, where there has been a defective tender of goods contracted to be sold and delivered, and where the position of the buyer has not been altered by reason of such faulty tender, the seller may, within the contract period, rectify his mistake and make delivery of the goods covered by the contract.

In the recent case of *Portfolio* v. *Rubin* (196 App. Div. 316), which passed through this court, Mr. Justice LAUGHLIN said: " The plaintiff had a right, if he acquiesced in the defendant's objection to part of the goods, to replace the rejected goods by others conforming to the contract." Professor Williston, in his excellent work on Contracts (Vol. 3, p. 2344), states the rule as follows: " Frequently by the terms of a contract a promisor is given a period of time at any moment of which he may make the agreed performance. Such a contract will not be broken until the agreed period has elapsed. *This is true even though the promisor may have made a defective attempt to perform at an earlier day.*" (Italics are the writer's.)

The same learned text-writer, in his work on the Law of Sales (at § 459) thus enunciates the same rule: " * * * though the buyer may refuse the defective tender, it seems that if a proper tender is thereafter made within such limit of time as satisfies the terms of the contract, the buyer is bound to accept." (See, also, *Cahen* v. *Platt*, 69 N. Y. 348.)

Had the defendant desired to rescind the contract by reason of the tender by plaintiff in December, 1918, of goods not within the contract, he should have acted promptly and manifested such an intention. He did nothing of the kind. He merely refused to accept delivery of the December installment. He wrote plaintiff as follows: " These goods are not in accordance with the make purchased by contract or at the Mill as per contract, and we therefore beg to advise you that we now reject this entire lot and must request your check by return of mail for the amount of invoice paid you. The bales are still undelivered on dock and we absolutely refuse to recognize them or accept them in any manner, shape or form." Thereby defendant did not evidence any intent to *rescind* the contract. He merely wrote plaintiff that, because the goods embraced in such delivery were not of the make covered by the contract, " *we now reject this entire lot,*" and demanded return of the moneys paid therefor. Far from manifesting any intention or desire to rescind, the defendant merely rejected the entire lot tendered by the plaintiff on December sixteenth. The market price of the goods covered by the contract had then declined some two cents per yard. Suppose that the market price had risen, was there a syllable contained in defendant's communication rejecting the goods tendered which would have relieved plaintiff from completing his contract and, within the time limited, furnishing defendant with the entire 2,000 pieces for which he had contracted? Most assuredly not. The obligation on the part of the plaintiff was plain. Defendant did nothing to relieve him therefrom. In

acknowledgment of the return by plaintiff of his check given in payment of the rejected delivery of December 16, 1918, defendant, on December twenty-sixth, following, wrote plaintiff as follows:

" We beg to acknowledge receipt of your check for $11,408.22 in payment of * * * Cloth returned to you, being the merchandise covered by your invoice of Dec. 16th, 1918, and which we were compelled to reject as not being in accordance with our contract.

" Thanking you for your trouble in this matter, we remain."

Here again defendant manifested no intention to rescind the contract, for the completion of which there still remained to plaintiff more than a month's time.

The defendant, respondent, makes much of the fact that the thirty-one bales of goods tendered by plaintiff in January, 1919, contained an excess of ten pieces over the undelivered balance of the goods covered by the contract. The defendant invokes the provisions of section 125 of the Personal Property Law (as added by Laws of 1911, chap. 571) in justification of his refusal to accept the January tender. The statute referred to does provide that, where the seller delivers to the buyer a quantity of goods larger than he contracted to sell, the buyer may accept the goods included in the contract and reject the rest, *or he may reject the whole.* There would be much force in the position of the respondent in this respect, were it not for the fact that upon rejection he made no objection that the tender was for an excess amount over the balance of the goods for which the parties had contracted, but, on the contrary, rejected the tender upon the sole ground that he had rescinded the contract in the previous December by reason of the erroneous delivery then attempted. Having taken that position, he cannot now claim the right to reject upon another ground not claimed when the tender was refused. (*Smith Co., Ltd.,* v. *Moscahlades,* 193 App. Div. 126; *Littlejohn* v. *Shaw,* 159 N. Y. 188; *Hess* v. *Kaufherr,* 128 App. Div. 526.) In *Hess* v. *Kaufherr* (*supra,* 527), writing for a unanimous court in this department, Mr. Justice HOUGHTON said: " When the refusal to accept purchased goods is based upon particular objections, formulated and deliberately stated, all other objections are deemed waived, and the vendor to recover the price need only prove compliance with the contract of sale in the particulars covered by the stated objections."

It follows that the learned court at Trial Term erred in directing a verdict in favor of the defendant, and that the judgment entered thereon should be reversed, with costs to the appellant, and, both sides having moved for the direction of a verdict, plaintiff's motion should be granted and a verdict be directed in his favor and against

the defendant for the sum of $4,077.57, besides interest, and that thereon the plaintiff should have judgment against the defendant, with the costs of the action to be taxed.

Clarke, P. J., Laughlin, Dowling and Page, JJ., concur.

Judgment reversed, with costs, plaintiff's motion for direction of a verdict granted and judgment thereon ordered in favor of plaintiff for $4,077.57 and interest, with costs to be taxed.