Harold H. Hymes, J.
The plaintiff is a franchised representative of Acousticon, a manufacturer of hearing aids. On January 15, 1966, the defendant signed a contract to purchase a Model A-660 Acousticon hearing aid from the plaintiff. The defendant specified Model A-660 because he had been tested at a hearing aid clinic and had been informed that the best hearing aid for his condition was this Acousticon model. An ear mold was fitted to the defendant and the plaintiff ordered Model A-660 from Acousticon.
On February 2, 1966, in response to a call from the plaintiff the defendant went to the plaintiff’s office for his hearing aid. At that time he was informed that Model A-660 had been modified and improved, and that it was now called Model A-665. This newer model had been delivered by Acousticon for the defendant’s use. The defendant denies that he understood this was a different model number. The hearing aid was fitted to the defendant. The defendant complained about the noise, but was assured by. the plaintiff that he would get used to it.
The defendant tried out the new hearing aid for the next few days for a total use of 15 hours. He went back to the hearing clinic, where he was informed that the hearing aid was not the model that he had been advised to buy. On February 8, 1966, he returned to the plaintiff’s office complaining that the hearing aid gave him a headache, and that it was not the model he had ordered. He returned the hearing aid to the plaintiff, for which he received a receipt. At that time the plaintiff offered to get Model A-660 for the defendant. The defendant neither consented to nor refused the offer. No mention was made by either party about canceling the contract, and the receipt given *5 by the plaintiff contained no notation ox indication that the plaintiff considered the contract cancelled or rescinded.
The plaintiff immediately informed Aconsticon of the defendant’s complaint. By letter dated February 14, 1966, Acousticon, writing directly to the defendant, informed him that Model A-665 was an improved version of Model A-660, and that they would either replace the model that had been delivered to him or would obtain Model A-660 for him. He was asked to advise the plaintiff immediately of his decision so that they could effect a prompt exchange. After receiving this letter the defendant decided that he did not want any hearing aid from the plaintiff, and he refused to accept the tender of a replacement, whether it be Model A-665 or A-660.
The plaintiff is suing for the balance due on the contract. Although he had made a down payment of $80, the defendant made no claim for repayment of his down payment until the case was ready to go to trial. The plaintiff objected to the counterclaim as being untimely. There is nothing in the pleadings to show that such a claim had been previously made by the defendant and, therefore, the court will not consider any counterclaim in this matter.
The question before the court is whether or not the plaintiff, having delivered a model which admittedly is not in exact conformity with the contract, can nevertheless recover in view of his subsequent tender of the model that did meet the terms of the contract.
The defendant contends that since there was an improper delivery of goods, the buyer has the right to reject the same under sections 2-601 and 2-602 (subd. [2], par. [c]) of the Uniform Commercial Code. He further contends that, even if the defendant had accepted delivery, he may, under section 2-608 (subd. [1], par. [b]) of the Uniform Commercial Code, revoke his acceptance of the goods because “ his acceptance was reasonably induced * * * by the seller’s assurances.” He also relies on section 2-711, claiming that he may recover not only the down payment but also consequential damages.
The defendant, however, has neglected to take into account section 2-508 of the Uniform Commercial Code which has added a new dimension to the concept of strict performance. This section permits a seller to cure a nonconforming delivery under certain circumstances. Subdivision (1) of this section enacts into statutory law what had been New York case law. This permits a seller to cure a nonconforming delivery before the expiration of the contract time by notifying the buyer of his intention to so cure and by making a delivery within the *6 contract period. This has long been the accepted rule in New York. (Lowinson v. Newman, 201 App. Div. 266; Portfolio v. Rubin, 196 App. Div. 316.)
However, subdivision (2) of section 2-508 of the Uniform Commercial Code goes further and extends beyond the contract time the right of the seller to cure a defective performance. Under this provision, even where the contract period has expired and the buyer has rejected a nonconforming tender or has revoked an acceptance, the seller may ‘1 substitute a conforming tender” if he had “ reasonable grounds to believe” that the nonconforming tender would be accepted and “ if he seasonably notifies the buyer ” of his intention “ to substitute a conforming tender.” (51 N. Y. Jur., Sales, p. 41.)
This in effect extends the contract period beyond the date set forth in the contract itself unless the buyer requires strict performance by including such a clause in the contract.
“ The section [§ 2-508, subd. (2)] rejects the time-honored, and perhaps time-worn notion, that the proper way to assure effective results in commercial transactions is to require strict performance. Under the Code a buyer who insists upon such strict performance must rely on a special term in his agreement or the fact that the seller knows as a commercial matter that strict performance is required.” (48 Cornell L. Q. 13; 29 Albany L. Rev. 260.)
This section seeks to avoid injustice to the seller by reason of a surprise rejection by the buyer. (Official Comment, McKinney’s Cons. Laws of N. Y., Book 62½, Uniform Commercial Code, § 2-508.)
An additional burden, therefore, is placed upon the buyer by this section. “As a result a buyer may learn that even though he rejected or revoked his acceptance within the terms of 'Sections 2-601 and 2-711, he still may have to allow the seller additional time to meet the terms of the contract by substituting delivery of conforming goods.” (3 Bender’s Uniform Commercial Code Serv., Sales and Bulk Transfers, § 14-02 [1] [a] [ii].)
Has the plaintiff in this case complied with the conditions of section 2-508?
The model delivered to the defendant was a newer and improved version of the model that was actually ordered. Of course, the defendant is entitled to receive the model that he ordered even though it may be an older type. But, under the circumstances, the plaintiff had reasonable grounds to believe that the newer model would be accepted by the defendant. '
The plaintiff acted within a reasonable time to notify the *7 defendant of his tender of a; conforming model. (Uniform Commercial Code, § 1-204.) The defendant had not purchased another hearing aid elsewhere. 11 is position had not been altered by reason of the original nonconforming tender.
The plaintiff made a proper subsequent conforming tender pursuant to subdivision (2) of section 2-508 of the Uniform Commercial Code.
Judgment is granted to plaintiff.